ST. LOUIS, KANSAS CITY AND SPRINGFIELD

# COURTS OF APPEALS

AT THE

MARCH TERM, 1913.

*(Continued from Volume 172)*

WILLIAM H. JONES, Respondent, v. PRUDEN-
TIAL INSURANCE COMPANY OF AMERICA,
Appellant.

St. Louis Court of Appeals, April 8, 1913.

1. LIFE INSURANCE: Industrial Policy: Payment Under "Fa-
cility of Payment" Clause: Rights of Assignee.   Under a
"facility of payment" clause of an industrial life insurance
policy, providing that insurer may make any payment pro-
vided for in the policy to any relative by blood, or connection
by marriage, of the insured, etc., a payment to the widow of
insured, either in full or in part as a compromise, will oper-
ate as a discharge of insurer, unless the rights of others have
attached; but if there has been a valid assignment of the pol-
icy, the assignee must be compensated to the extent of his
rights.

2. ———: Non-Assignment Provision: Waiver.   A provision in a
life insurance policy, that an assignment of the policy shall
render it void, is for the benefit and convenience of insurer,
and may be waived by it.

173 Mo. App.]          (1)

Jones v. Insurance Co.

3. ———: Industrial Policy: Non-Assignment Provision: Waiver:
Authority of Agent. A soliciting agent of an industrial in-
surance company, who is given a certain territory in which
to solicit insurance—most of the business being done among
the poorer people, many of whom are illiterate—and who de-
livers policies and collects premiums for insurance thereto-
fore written, may waive a provision in a policy that the policy
shall be void if assigned.

4. ———: ———: ———: ———: ———. A provision in an industrial
life insurance policy that it would be void if assigned was
waived where the soliciting agent of insurer, who was given
certain territory in which to solicit insurance, and delivered
policies and collected premiums, entered into an agreement
with insured and a third person that the insurance was to
be taken out for the benefit of the latter, a creditor of in-
sured, and the policy was to be assigned to him, and that he
was to pay the premiums, which he did up to the death of
insured.

5. ———: ———: ———: ———: ———: Estoppel. A life insurance
company will be estopped to insist upon a forfeiture of an
industrial policy on the ground it was assigned in violation
of a clause of the policy, providing that an assignment would
render it void, if, by its conduct, it leads insured and the as-
signee honestly to believe that the premiums paid are received
on a valid insurance contract; and the acts and conduct, in
that regard, of a soliciting agent, who is given certain terri-
tory in which to solicit insurance and who delivers policies
and collects premiums, will be regarded as the acts and con-
duct of the company.

6. COMMON LAW: Purposes: Administration. It is the high
aim and purpose of the common law to afford adequate relief,
to the end of effectuating a just result in the circumstances of
every case, and it should be administered in every instance
with reference to the peculiar facts of each case, in connec-
tion with a degree of common sense from which the law itself
is evolved.

7. WITNESSES: Waiver of Incompetency. The general rule is,
that the right to object to a witness as being incompetent is
waived if the objection is not made at the first opportunity;
and hence where an objection to the competency of a witness
was not made in a justice's court, the party so failing waived
his right to object on a trial de novo in the circuit court, on
appeal.

8. DAMAGES: Punitive Damages: Pleading: Verdict: Stating
Amount Separately. Secs. 1796 and 1797, R. S. 1909, provid-
ing that where exemplary or punitive damages are recoverable,

the petition and verdict shall state separately the amount thereof, contemplate the subject of "exemplary or punitive damages" and therefore apply only to such cases.

9. **PENALTY: Damages: Definitions.** There is a distinction between "penalty" and "damages," in the strict sense of the terms, in that a penalty goes in the nature of a fine or forfeiture, and when it is levied by statute in a specific amount, it should be pursued as such by pointed and direct pleading to that effect, while, generally, damages are based and recoverable on the idea of a loss to be compensated, a damage to be made good.

10. **INSURANCE: Punitive Damages: Verdict: Stating Amount Separately.** The damages contemplated by Sec. 7068, R. S. 1909, allowing damages, not over 10 per cent of the sum due, and attorney's fees, to a plaintiff in an action against an insurance company, where such company has vexatiously refused to pay the loss, and providing that "judgment shall be entered for the aggregate sum found in the verdict," are, in a sense, to be regarded as punitive damages, although they also partake of the nature of a penalty, and hence, under Secs. 1796, 1797, such damages must be stated separately in the pleadings and in the verdict of the jury; the word "aggregate" presupposing an award by the jury in parts.

11. **APPELLATE PRACTICE: Harmless Error.** In an action on a life insurance policy, where the verdict was erroneous, in that it failed to separately state the amounts respectively awarded under the policy and for damages for vexatious refusal to pay an attorney's fees, under Sec. 7068, R. S. 1909, but the aggregate amount awarded was a reasonable and correct amount, under the evidence, the error will be deemed immaterial, and will not work a reversal, in view of Sec. 2082, R. S. 1909.

Appeal from St. Louis City Circuit Court.—*Hon. Leo. S. Rassieur,* Judge.

AFFIRMED.

*Fordyce, Holliday & White* for appellant.

(1) The court erred in permitting the plaintiff to testify as to the assignment to himself, since he was an incompetent witness, and objection was duly made to his testimony. Sec. 6354, R. S. 1909; Saetelle v. Insurance Co., 81 Mo. App. 509; 86 Mo. App. 156;

Donnell v. Jung, 81 Mo. App. 577; Johnson v. Burks, 103 Mo. App. 230, 231; Chapman v. Dougherty, 87 Mo. 617; Sec. 7579, R. S. 1909; Comfort v. Lyman, 67 Mo. App. 670; Compton v. Parsons, 76 Mo. 455; Simon v. Ryan, 101 Mo. App. 16. (2) The court erred in refusing to enforce the condition of the policy that the same should be void if assigned. 25 Cyc. 770, ch. 2; McQuillan v. Mutual, etc., Assn., 112 Wis. 665, 56 L. R. A. 233; Wallace v. Des Moines, etc., Assn., 80 Mo. App. 102. (3) The court erred in refusing to nonsuit the plaintiff because the company had made settlement under the policy with the wife of the insured. Kelly v. Prudential Ins. Co., 148 Mo. App. 249; Floyd v. Prudenial Ins. Co., 72 Mo. App. 455. (4) The court erred in the first instruction given of its own motion. Sheets & Day v. Insurance Co., 153 Mo. App. 620; Rhodus v. Life Ins. Co., 156 Mo. App. 281. (5) The court erred in giving plaintiff's instruction. Authorities under point 4; Sec. 7068, R. S. of Mo. 1909; Blackwell v. Insurance Co., 80 Mo. App. 78; Renfro v. Insurance Co., 148 Mo. App. 258; Rogers v. Insurance Co., 157 Mo. App. 671. (6) The court erred in refusing the instructions offered by the defendants. Authorities under points 2 and 3. (7) The court erred in modifying and giving of its own motion defendant's instructions. Authorities under point 4. (8) The court erred in overruling defendant's motion for new trial. R. S. 1909, secs. 2022-3; Boulware v. Automobile Co., 152 Mo. App. 567. (9) The court erred in overruling defendant's motion in arrest of judgment. R. S. 1909, secs. 1796-1797, 7068; Blackwell v. Ins. Co., 80 Mo. App. 75; Johnson v. Bedford, 90 Mo. App. 43; Ramsey v. Underwriters, 71 Mo. App. 380; Rodgers v. Insurance Co., 186 Mo. 248.

*James J. O'Donohoe* for respondent.

(1) Defendant's counsel cross-examined the plaintiff at the trial before the justice and hence waived

his incompetency as a witness, if it existed, and being once waived could not be recalled. Norvell v. Cooper, 155 Mo. App. 450; Loan Co. v. Killian, 153 Mo. App. 113; Imboden v. Trust Co., 111 Mo. App. 220. (2) The "facility of payment" provisions and "policy when void" provisions contained in the policy in suit offer strange contradictions. "And where there are inconsistent provisions effect will be given to the one most favorable to the insured." Burnett v. Ins. Co., 68 Mo. App. 343; Hoffman v. Indemnity Co., 56 Mo. App. 301; Brown v. Assurance Co., 45 Mo. 221; 1 Bacon on Benefit Soc. (3 Ed.), sec. 179; 1 Cooley Briefs, pp. 632-634. Forfeitures are not favored in law and the construction of an insurance policy most favorable to the insured will be adopted. Zinc Cos. v. Assurance Corporations, 144 Mo. App. 380; Settle v. Ins. Assn., 150 Mo. App. 520; Canning Co. v. Accident Co., 154 Mo. App. 327. (3) The condition of the policy, if valid, that the same should be void if assigned, has been waived. Soliciting agents have power to waive policy provisions working forfeitures. Estate Co. v. Casualty Co., 149 S. W. 1050; Wagaman v. Insurance Co., 110 Mo. App. 616; Brennen v. Insurance Co., 99 Mo. App. 718; Ormsby v. Insurance Co., 98 Mo. App. 371; Ross-Langford v. Insurance Co., 97 Mo. App. 79; Saetelle v. Ins. Co., 81 Mo. App. 509; Schmidt v. Insurance Co., 2 Mo. App. 339; Parsons v. Insurance Co., 132 Mo. 583; Andrus v. Insurance Assn., 168 Mo. 151. Knowledge of and notice to defendant's agent of the assignment of the policy was knowledge and notice to defendant. Hilburn v. Ins. Co., 140 Mo. App. l. c. 368; Shook v. Ins. Co., 154 Mo. App. 394; Shutts v. Ins. Co., 159 Mo. App. 436. (4) The plaintiff's rights under the policy were not affected by the settlement with the wife of the insured. Wilkinson v. Insurance Co., 63 Mo. App. 404, 64 Mo. App. 172. Moreover, the sum due under the policy was a certain sum, fixed by the contract of insurance, and the payment of a less

sum to the wife of the insured was no consideration for the discharge of such liquidated amount. Head v. Ins. Co., 147 S. W. 832; Crowder v. Ins. Co., 115 Mo. App. 540. (5) The verdict responds to all the issues and is in proper form. Sec. 7068, R. S. 1909; Minter v. Bradstreet Co., 174 Mo. 444; Courtney v. Blackwell, 150 Mo. 277; Lead Co. v. Railroad, 123 Mo. App. 408; Happy v. Prichard, 111 Mo. App. 6; Cordage Co. v. Yeargain, 87 Mo. App. 561; Lamberson v. Long, 66 Mo. App. 253. Sections 1796, 1797 have no application in cases originating in justice of the peace courts. Loomis v. Railroad, 17 Mo. App. 340. Furthermore, said sections have no bearing, because attorney's fees and damages are not of a punitive character, but designed to provide indemnity. Ins. Co. v. Corbett, 69 Kan. 564, 77 Pac. 108. Sec. 7068, R. S. 1909, is part of the policy in suit, for the statutes of a State within which a contract is entered into become a part of the contract as if copied into it. Hence said part of the contract, namely, section 7068, supra, insures against loss from litigation. The purpose of the statute is not to penalize the insurer, but to indemnify the insured. Cravens v. Ins. Co., 148 Mo. 604; Reed v. Painter, 129 Mo. 680; Havens v. Fire Ins. Co., 123 Mo. 417; State v. Grant, 79 Mo. 122; Wolff v. Berning, 74 Mo. 96; Brine v. Hartford Ins. Co., 96 U. S. 858. (6) The court accurately and properly submitted the question of damages and attorney's fee to the jury. Sec. 7068, R. S. 1909; Kellogg v. Ins. Co., 133 Mo. App. 391; Utz v. Ins. Co., 139 Mo. App. 153; Cox v. Ins. Co., 154 Mo. App. 464; Williams v. Ins. Co., 189 Mo. 70; Keller v. Ins. Co., 198 Mo. 440; Welsh v. Ins. Co., 147 S. W. 147.

NORTONI, J.—This is a suit by the assignee, a creditor of the insured, on a policy of life insurance. Plaintiff recovered and defendant prosecutes the appeal.

The policy contains a provision to the effect that it should be void if assigned, and the questions for ultimate consideration relate to the competency of finding a waiver of that clause on the part of the company, or an estoppel through the acts of its soliciting agent engaged in negotiating industrial insurance, when it appears that such agent wrote the application for the policy, delivered the policy to the creditor at the instance of the insured, and afterwards, with full knowledge of its assignment, continued, without objection, to collect premiums thereon from the creditor who is plaintiff here.

Defendant is engaged in the business of industrial life insurance and maintains a general office in the city of St. Louis in connection therewith. It appears that plaintiff is a barber and the insured, Lang, was his debtor to the amount of $53.50. James, defendant's soliciting agent, had charge of what is known as a "debit" for it in the city and solicited life insurance among what is commonly known as the "plain people;" took applications therefor; collected the first premium; delivered the policies to his patrons and thereafter collected weekly premiums thereon. In prosecuting this business, as before said, the soliciting agent has charge of what is known in industrial insurance nomenclature as a "debit"—that is, a certain identified territory in which he operates by soliciting new business and taking care, as through collection of the debit accounts of the company's patrons for insurance theretofore written and outstanding. Such insurance is usually written in small amounts and on the weekly payment plan, and the agent in charge of the "debit" calls and collects the premium—that is, usually but a few cents, as in this case twenty-five cents per week. Because of this, the soliciting agent in charge of a "debit" becomes well known in the neighborhood and is in frequent contact with the patrons of the company.

It appears that James, defendant's soliciting agent, was in plaintiff's barber shop and solicited insurance on the life of Lang, who resided in the neighborhood. Plaintiff, the barber, remarked that Lang was his debtor and said he would pay the premiums if Lang would take out a policy. James thereupon urged Lang to do so and he consented on the terms suggested by the plaintiff. With this understanding between Lang, the insured, plaintiff and the agent, the latter prepared an application for the policy and Lang executed it. A few days thereafter, the policy in suit was issued at the general office of the company in the city and delivered by James to the plaintiff at his barber shop. But plaintiff was not named therein as the beneficiary. About two weeks later, Lang, the insured, executed a written assignment of the policy to the plaintiff, William H. Jones, "subject to the approval of said Prudential Insurance Company." This assignment was annexed to the policy. The insured did not present the policy to the general office of the company for its consent, but informed James, the soliciting agent, of the assignment when he called to collect the next premium. James said it was all right and collected the weekly premiums of twenty-five cents thereafter as before. Each week James, the soliciting agent, called at plaintiff's barber shop and collected premiums on the policy and receipted therefor in Lang's book, which the plaintiff held also in connection with the policy. The policy vouchsafes the payment of $120 on Lang's death as the amount insured on his life. It was issued in November and Lang died in the following March.

After Lang's death, defendant refused to pay plaintiff any part of the insurance money, for the reason the policy contains a provision inhibiting its assignment, to the effect that it should become void if it be assigned or otherwise parted with. Besides this provision, the policy contains what is known an indus-

trial insurance as a "facility of payment" provision as well. The "facility of payment" provision goes to the effect that the company may make any payment provided for in the policy to any relative by blood or connection by marriage of the insured, or to any other person appearing to the company to be equitably entitle to the same by reason of having incurred expense on behalf of the insured for his or her burial, etc., or if the insured be more than fifteen years of age at the date of the policy, for any other purpose; and the production by the company of a receipt signed by any or either of said persons or of other sufficient proof of such payment to any or either of them shall be conclusive evidence that such payments have been made to the person or persons entitled thereto and that all claims under this policy have been fully satisfied.

On the death of Lang, plaintiff asserted his claim, but defendant did not recognize it. A few days thereafter, Mr. Dubard, defendant's assistant superintendent in St. Louis, called at plaintiff's barber shop to investigate the claim. While there, this officer induced plaintiff to deliver the policy to him "for examination by the company," as is recited in a written receipt given by Dubard therefor to plaintiff on March 22nd. Defendant, having thus obtained possession of the policy from plaintiff, retained it and refused to surrender it to him thereafter. A few months later, on September 23d, defendant, proceeding on the theory that the assignment to plaintiff was void because of the condition in the policy to that effect in case of assignment, paid Mrs. Evelyn Lang, the widow of the insured, as it insists by way of compromise and under the facility of payment provision, sixty dollars as in full settlement of all claims under the policy. In consideration of the payment, Mrs. Lang executed a receipt to defendant as in full release of every claim under the policy, etc.

The policy is in the amount of $120, sixty dollars of which has been paid to Mrs. Lang, as above stated, and plaintiff prosecutes this suit for the amount of the indebtedness of the insured to him, that is $53.50, and his right of recovery to that extent is entirely clear (see Warnock v. Davis, 104 U. S. 775), unless the provision in the policy declaring it void in case of an assignment should prevail.

There can be no doubt that it is competent and proper for defendant to pay the insurance money under the "facility of payment" clause to the widow, either in full or in part as on a valid compromise, and that it is entitled to a full acquittance on so doing from further obligation to respond under the policy in those cases where it does not appear that the rights of others have attached thereto. But if a valid assignment appears, then, of course, the assignee is to be compensated to the extent of his rights. [See Wilkinson v. Met. L. Ins. Co., 63 Mo. App. 404; Wilkinson v. Met. L. Ins. Co., 64 Mo. App. 172; Renfro v. Met. L. Ins. Co., 148 Mo. App. 258, 129 S. W. 444.] It is clear that the policy was assigned to plaintiff in the instant case by the insured, and that such assignment is valid to the extent sought to be enforced—that is, $53.50—unless it is rendered void by the provision in the policy to that effect. No express consent to the assignment was indorsed by the company or its general officers on the policy, and the assignment itself contemplates that the company's assent should be had.

But it is obvious the provision of the policy rendering it void in case of an assignment is incorporated for the benefit and convenience of the defendant and may therefore be waived by it. [See Saetelle v. Met. L. Ins. Co., 81 Mo. App. 509, 19 Am. & Eng. Ency. Law (2 Ed.), 96.] It does not appear that the general officers in charge of defendant's office in St. Louis had knowledge of the assignment until after the death of the insured and the question is, may a waiver touch-

ing this matter be predicated on the knowledge and acquiescence of James, the soliciting agent, who negotiated the insurance, delivered the policy to plaintiff and collected the premiums thereon week after week with full knowledge concerning the entire transaction? When the application was entered into by the insured, it was with an express understanding on the part of the insured, Lang, the agent, James, and plaintiff that the insurance was taken out to the use of plaintiff as the creditor of Lang, and that plaintiff should pay the premiums thereon. Plaintiff then paid the first and thereafter all subsequent premiums to the agent, James, who not only possessed full knowledge touching the matter but expressly agreed thereto. In keeping with this arrangement, the policy was delivered by James, the agent, to plaintiff at his barber shop, but no beneficiary was named therein as is usual in such policies containing the "facility of payment" clause, for they appear to authorize the insurer to exercise considerable discretion as to who shall receive the insurance money. About two weeks thereafter, the assignment was executed by the insured on the policy, and James was fully informed by plaintiff concerning it. It appears that James consented by saying, "All right," and continued to collect the premiums from plaintiff week after week. All of the premiums were paid until the death of the insured occurred.

In the circumstances of the case, such knowledge and conduct on the part of James, the soliciting agent, should be regarded as revealing a waiver on the part of the company of the condition of the policy against assignments, for though such agent is but a mere solicitor, it is obvious that he possessed authority to take applications, deliver policies thereon and collect the premiums. In this case, the insurance was induced in the first instance by James with a full understanding that it was to be for plaintiff's benefit and on that be paid all of the premiums to James and received credit

in the book of the insured therefor. The premiums thus obtained by the agent were paid to defendant and retained by it, it is true, without knowledge on its part concerning all of the facts, but in so far as those premiums were solicited and collected, no one can doubt the authority of James in that behalf. If it were competent for James to induce the insurance and collect the premiums and deliver the policy therefor, it was certainly competent for him to waive the condition of the policy, which waiver alone rendered the insurance valid to the use contemplated and which he utilized to the end of negotiating it. [Shotliff v. Mod. Woodmen, 100 Mo. App. 138, 73 S. W. 326; Mod. Woodmen v. Angle, 127 Mo. App. 94, 104 S. W. 297; Wagaman v. Security, etc., L. Ins. Co., 110 Mo. App. 616, 85 S. W. 117.]

Moreover, in answer to the suggestion that it is not competent as a rule for a mere soliciting agent to either waive such a condition of the policy or estop the company thereabout, the nature and character of the business and the authorized duties of such agents are to be considered. As before stated, the business of industrial insurance is conducted principally among people of the poorer classes, many of whom are illiterate and but slightly informed concerning intricate business matters. Soliciting agents are given separate portions of territory with a view of soliciting insurance among these people, delivering policies to them, and by dividing the payments into weekly stipends, founding a sort of credit system therein known as a "debit." These agents call upon the patrons of the company weekly, make collections and enter credit therefor in the book of the insured and seem to have general supervision pertaining to such matters within the immediate "debit." To the people with whom they deal, such agents are justly regarded as representatives of the company, with complete power touching

the performance of the duties which they daily exercise in their presence.

In these circumstances, it would seem, furthermore, that, besides the waiver referred to, the precepts of natural justice should preclude the company, through the intervention of the principle of estoppel, from disputing the validity of the acts and conduct of such a soliciting agent, by which its patrons are induced to part with the premium which eventually finds its way into the home office till of the company. It is the high aim and purpose of the common law to afford adequate relief, to the end of effectuating a just result in the circumstances of every case. It should be administered, too, in every instance with reference to the peculiar facts of each case, in connection with a degree of common sense from which the law itself is evolved. In this view, the acts and conduct of such agents in so far as they are put forward and performed in the fullfilment of their office in negotiating insurance and collecting the premium thereon should be regarded as those of the company. It is certain that the company itself will be estopped to insist upon a forfeiture if, impliedly by the course of its conduct, it leads the insured or his assignee honestly to believe that the premiums being paid are received as compensation on a valid insurance contract. [19 Am. & Eng. Ency. Law (2 Ed.), 55.] There is an abundance in the case to sustain the finding of both a waiver and an estoppel against the company.

Over the objection of defendant that the other party to the contract of assignment, Lang, the insured, was dead, the plaintiff was permitted to testify fully concerning the assignment to him. However, it was admitted by counsel representing defendant that, though the defendant was represented and present in court before the justice of the peace, plaintiff had testified without objection, concerning the same matter in this identical case before the justice of the peace,

and that defendant cross-examined him fully with respect to it. Upon this admission being made, the circuit court permitted plaintiff to testify concerning the assignment. Obviously no error appears in this, for though plaintiff may have been an incompetent witness under the statute, his incompetency was waived by the conduct of defendant before the justice. By the general rule the right to object to any witness as incompetent is waived unless the objection is taken at the first opportunity. It is conceded that no such objection was made before the justice and furthermore that defendant's counsel participated in examining the witness there fully. This being true, the right to object on the ground of his incompetency under the statute was waived so as to enable plaintiff to testify concerning the same matter at another trial in any court and such waiver could not be recalled. [See Imboden v. St. Louis Union Trust Co., 111 Mo. App. 220, 232, 233, 86 S. W. 263; Norvell v. Cooper, 155 Mo. App. 445, 134 S. W. 1095.] Moreover, the fact that the statute contemplates a trial *de novo* in the circuit court on appeal, without regard to any error, defect or imperfection in the proceedings before the justice is without influence on the question whatever. [See Tierney v. Hannon's Executor, 81 Mo. App. 488, 492, 493.]

Besides $53.50, the amount of his debt, plaintiff prayed a recovery for interest thereon, and also for ten per cent on the amount sued for and a reasonable attorney's fee. By its verdict the jury awarded a general recovery in the amount of $107.62, without specifying the amount plaintiff was entitled to on the policy, as the assignee thereof, on account of his debt nor an amount as ten per cent thereon nor a specific amount as a reasonable attorney's fee. It is argued that the court erred in receiving this verdict, for the reason the statute requires a specific finding touching each of the several matters mentioned.

The statutes on which the argument proceeds are as follows: "In all actions where exemplary or punitive damages are recoverable, the petition shall state separately the amount of such damages sought to be recovered." [Sec. 1796, R. S. 1909.]

The succeeding section (Sec. 1797, R. S. 1909) is as follows: "In all actions wherein such damages are recoverable and are allowed by the jury, the amount thereof shall be separately stated in the verdict."

It is to be noted that these statutes contemplate the subject of "exemplary or punitive damages" and therefore apply only to such cases. But we believe a portion of the damages recovered here to be exemplary or punitive in character. There is a distinction between "penalty" and "damages" in the strict sense of the terms, in that a penalty goes in the nature of a fine or forfeiture, and when it is levied by the statute in a speific amount, it should be pursued as such by pointed and direct pleading to that effect, as was pointed out in Casey v. St. Louis Transit Co., 116 Mo. App. 235, 91 S. W. 419; s. c., 186 Mo. 229, 85 S. W. 357; whereas generally damages are based and recoverable on the idea of a loss to be compensated, a damage to be made good. [See Nicholas v. Kelley, 159 Mo. App. 20, 139 S. W. 248.]

Our statute touching the matter involved here is as follows:

"In any action against any insurance company to recover the amount of any loss under a policy of fire, life, marine or other insurance, if it appear from the evidence that such company has vexatiously refused to pay such loss, the court or jury may, in addition to the amount thereof and interest, allow the plaintiff damages not exceeding ten per cent on the amount of the loss and a reasonable attorney's fee; and the court shall enter judgment for the aggregate sum found in the verdict." [Sec. 7068, R. S. 1909.]

From this it appears that in those cases where the company has vexatiously refused to pay the loss the jury may award, in addition to its amount and interest, damages not to exceed ten per cent thereon, and a reasonable attorney's fee. The statute by employing the word "damages" rather than penalty identifies the amount of this award as damages and the courts have heretofore declared it such, but of a punitive character as for willful conduct in vexatiously refusing to pay the loss. The idea seems to be that the award of ten per cent on the amount of the loss and the reasonable attorney's fee contemplated by the statute are to be regarded in a sense as damages, for the statute so names it, and because a recovery on that score tends to compensate for the loss entailed by the act of the company in forcing the litigation upon the insured, but as penalty, too, by way of punishment for the wrongful act of the company as through its willful, vexatious refusal. [See Blackwell v. Am. Central Ins. Co., 80 Mo. App. 75; Thompson v. Traders' Ins. Co., 169 Mo. 12, 68 S. W. 889.] Obviously such a recovery must be regarded as for damages, exemplary or punitive in character, and thus falls within the very terms of the statute quoted, requiring a special award in the verdict. Moreover, the statute (Sec. 7068, R. S. 1909) authorizing the recovery of such damages seems to imply that the jury should state the amounts separately in the verdict, in that the concluding words of that statute direct that "the court shall enter judgment for the aggregate sum found in the verdict." The word "aggregate" means, according to Webster, formed by a collection of particulars into a whole mass or sum. Of it, the Supreme Court of California says, in Chapin v. Wilcox, 114 Calif. 498, aggregate is "a sum, mass, or assemblage of particulars; a total or gross amount. . . . It implies a plurality of units whose total amount it represents." It would seem that the statute thus directing the court to enter a

judgment for the aggregate sum found in the verdict presupposes an award by the jury in parts, as so much on the policy and so much on account of the other grounds therein mentioned. Obviously such course should be pursued in the interests of the administration of complete justice, for it is essential, in reviewing the verdict, to ascertain whether it conforms to the case as made in pleading and proof. Here it is impossible to interpret the verdict with a degree of precision, for the aggregate sum allowed is $107.62 and no items are given. No doubt $53.50 and $4.12 of this is intended to cover the amount of plaintiff's debt and interest, and it may be a portion of it is intended as an allowance of ten per cent on the principal amount as for vexatious delay, and it may be that another portion is to be regarded as for reasonable attorney's fees, but we are unadvised as to that.

But it is clear enough that plaintiff was entitled to a recovery, and the jury so found the fact to be. If he is entitled to a recovery at all, he is entitled to $53.50 and no doubt this amount is included in the verdict. The amount of $53.50 together with interest thereon at six per cent it seems would be $57.62; add to this fifty dollars and the entire amount totals $107.-62. The record is replete with evidence tending to prove a vexatious refusal to pay and to the effect that fifty dollars is a reasonable attorney's fee in the case and it is obvious that no injustice would appear had the jury expressly found such to be the fact, instead of doing so *sub silentio*. We are commanded by the statute (Sec. 2082, R. S. 1909) not to reverse judgments unless we believe that error has interposed which materially affects the merits of the controversy to the injury of the appellant. We do not believe the error in the form of the verdict entails substantial harm and in that view it should be regarded on the facts of the case as purely formal. See Courtney v.

173 Mo. App. 2

Blackwell, 150 Mo. 245, 277, 51 S. W. 668, where it appears the Supreme Court took a like view on a similar verdict. The judgment should be affirmed. It is so ordered. *Reynolds, P. J.,* and *Allen, J.,* concur.