Richard MOCK d/b/a Richard Mock Motors, Respondent,

v.

C. Lawrence LEGGETT, Receiver in Liquidation for Missouri Union Insurance Company, Appellant.

No. 23198.

Kansas City Court of Appeals.

Missouri.

March 6, 1961.

C. William Garver, Kansas City, for appellant.

Carl H. Willbrand, Solbert M. Wasserstrom, Kansas City, for respondent.

BROADDUS, Judge.

This is a suit on an insurance policy to recover for a loss arising from the theft of an automobile. Trial to a jury resulted in a verdict and judgment in favor of plaintiff in the sum of $2,293. Defendant appealed.

This case was previously tried, resulting in a verdict for defendant. From that judgment plaintiff appealed and the cause was remanded. See Mock v. Missouri Union Ins. Co., Mo.App., 328 S.W.2d 61.

At the second trial plaintiff called the same witnesses whom he had called at the first trial and they again testified to the following facts:

Plaintiff is a wholesale dealer in automobiles having his sole place of business in Kansas City, Missouri. Most of his business is done by buying automobiles in Kansas City and reselling them to dealers in California. His usual practice is to adver-

tise for drivers to take cars to California, the drivers thereby being afforded free transportation except for the purchase of gas and oil. After such driver leaves Kansas City, plaintiff's practice is to send a draft with the title papers attached to the purchasing dealer and when the automobile arrives on the West Coast the California dealer pays the draft and receives the title.

In July, 1956, in the course of said usual practice, plaintiff agreed to sell and deliver a certain Dodge automobile to John Goggin in San Francisco for $2,425. Said sale was not to be consummated until delivery of the automobile to Goggin in San Francisco.

On August 3, 1956, plaintiff entered into an arrangement with Reba Woodmansee for delivery of said Dodge automobile from Kansas City to Goggin in San Francisco. Mrs. Woodmansee had been recommended to plaintiff by her employer.

Mrs. Woodmansee had intended to drive said car to California with a fellow employee, Miss Walker, and with Miss Walker's mother. However, those two ladies were unable to make the trip and asked Mrs. Woodmansee to instead take Miss Walker's cousin, Kenneth Sunderland. Plaintiff knew that Mrs. Woodmansee intended to permit other people to ride with her but did not know who they would be.

Mrs. Woodmansee, together with Sunderland, drove the automobile directly from Kansas City to Lakewood, California, where they stopped at the home of Mrs. Woodmansee's sister. They remained inside the house for about two and one-half hours visiting and having coffee. Mrs. Woodmansee intended to return to her sister's house after she had taken the car for delivery to San Francisco, and she wanted to leave her luggage with her sister. The three of them went out to the car to remove Mrs. Woodmansee's luggage, and Mrs. Woodmansee and her sister carried the luggage into the house and stayed a short while inside hanging up some of the clothing. When they came out of the house, Sunder-

land and the car were gone. After several hours had passed, Mrs. Woodmansee reported the matter to the police, to Goggin and to the plaintiff. Nothing was heard from Sunderland nor was the car located until eight or nine months later.

Plaintiff gave notice of the loss and defendant denied liability. At the trial plaintiff offered evidence tending to show his actual damages. He also offered evidence as to the reasonable value of his attorneys' fees.

The policy of insurance sued on covered loss or damage to the automobile caused by theft, larceny, robbery or pilferage. However, its exclusion clause provided that there was no coverage for loss resulting from embezzlement, conversion, secretion, theft, larceny, robbery or pilferage committed by any person *entrusted* by the insured with either the custody or possession of the automobile. Our former opinion held that there was no substantial evidence presented that the automobile was *entrusted* to Sunderland.

Defendant's Point I attacks the form of the verdict. The fact of the matter is that the jury was properly instructed to state the amount of the penalty for vexatious delay separate from the amount of the actual damages. However, the verdict as returned by the jury was for one sum covering both actual damages and the penalty for vexatious delay. Defendant made no objection at the time the verdict was returned.

In any event, the irregularity in question is a mere matter of form and cannot be considered as reversible error. This point is directly ruled in Jones v. Prudential Insurance Co., 173 Mo.App. 1, 155 S.W. 1106, loc. cit. 1109. In that case the jury returned a general verdict for a lump sum dollar amount without being divided between actual damages and the amount awarded for vexatious delay. The defendant insurance company argued on appeal, just as defendant does here, that the form of the verdict constituted reversible error.

The court held, however, that error was harmless saying:

"We are commanded by the statute (Sec. 2082, R.S.1909 [V.A.M.S. § 510.310]) not to reverse judgments, unless we believe that error has interposed which materially affects the merits of the controversy to the injury of the appellant. We do not believe the error in the form of the verdict entails substantial harm, and in that view it should be disregarded on the facts of the case, as purely formal. See Courtney v. Blackwell, 150 Mo. 245, 277, 57 S.W. 668, where it appears the Supreme Court took a like view on a similar verdict." [173 Mo.App. 1, 155 S.W. 1110.]

The Jones case was followed in Buchholz v. Metropolitan Life Insurance Company, 177 Mo.App. 683, 160 S.W. 573, 575, where the Court held:

"This section (7068 [V.A.M.S. § 375.-420]) was construed by our court in Jones v. Insurance Company, supra, and it was there held that the jury should find separately in a case of this kind in fixing the amount to be recovered, specifying how much of the recovery was in the nature of the penalty or for punitive damages. But our court there held that an error of this kind was not reversible error. On the authority of that decision we rule this point against appellant."

The cases cited by defendant are not in point.

■ Defendant's next point challenges the sufficiency of the evidence to support the verdict. As we have stated, this is the second time the case has been before this court. The facts established at the second trial were the same as those developed at the first trial. Under such circumstances, it is well established that the former decision constitutes the law of the case and is now res adjudicata as to defendant's liability. Norris v. Bristow, Mo., 236 S.W.2d 316, 319; Lonnecker v. Borris, Mo., 245 S.W.2d 53, 55.

Defendant next attacks the sufficiency of the petition to state a cause of action. This case was tried the second time upon exactly the same petition that was before the court at the first trial, except only that plaintiff amended his damage figures.

■ It has long been settled in this State that on a remand for retrial the adequacy of the petition cannot be questioned, the reasoning being that the sufficiency of the petition was necessarily decided by the first appeal. In Crecelius v. Bierman, 68 Mo.App. 34, a defendant at the second trial after a remand, contended that the petition did not state a cause of action. The Court held:

"This objection is untenable. By remanding the case for trial on the identical petition, we necessarily decided that it did state a cause of action. This matter is res judicata, and not reviewable on a second appeal, even if it had been erroneously decided on the first appeal (citing cases)."

Defendant also complains about the submission of the issue of vexatious delay. At the first trial defendant's principal contention was that plaintiff's loss was not covered on the theory that Sunderland committed a conversion or embezzlement instead of a theft. This court held on the first appeal that said contention posed a false issue, and that the real issue was whether or not plaintiff had "entrusted" the automobile to Sunderland. Despite that ruling, defendant continued to insist at the second trial, on substantially the same pleadings and evidence, upon the same discredited contention. The established rule is that if the reasonable inference may be drawn from a general survey of all the facts and circumstances in the case that the refusal to pay the loss under the policy was without reasonable or probable cause or excuse, then the issue of defendant's vexatious refusal to pay the loss is properly submissible to a jury. Curtis v. Indemnity Co. of America, 327 Mo. 350, 37 S.W.2d 616, 628. We think the question was one of fact for the jury.

**144**

Defendant's next point attacks Instruction No. 3, but fails to state for what reason it is thought to be improper. The instruction deals with the measure of plaintiff's damages. We find that it has ample support in the evidence and thus rule the point against defendant.

Defendant's final contention is that the court erred in refusing to give Instructions A, B, C, D, E, F, G, H, I, J and K. The brief makes no attempt to advance any reason why any one of these eleven instructions should have been given. The point 'is' not properly before us. Ambrose v. M. F. A. Co-Operative Ass'n, Mo., 266 S.W.2d 647.

Finding no error in the transcript prejudicial to defendant the judgment is affirmed. All concur.