**LeRoy LANDUM, Respondent,**

v.

**Robert LIVINGSTON and Don Melching and Don's Car and Financing, a corporation, Appellants.**

**No. 24226.**

Kansas City Court of Appeals.

Missouri.

June 7, 1965.

Application to Transfer Denied Nov. 8, 1965.

Robert G. Duncan, Simon & Pierce, Kansas City, for appellants.

Robert J. Taylor, Louis A. Tritico, Kansas City, for respondent.

HOWARD, Judge.

This case originated in magistrate court and on appeal to the circuit court there was a judgment for the plaintiff in the amount of $1,488.50, plus costs, consisting of $488.50 actual damages and $1,000.00 punitive damages.

The evidence shows that on January 31, 1961, the plaintiff, LeRoy Landum, purchased a 1953 Nash automobile from defendant Don's Car and Financing Company. Plaintiff dealt with defendant Don Melch-

ing. Plaintiff made payments of $11.00 per week on the car to Mid-States Investment Company. These payments were occasionally late, but were made up to August 28th or August 29th, and the record shows plaintiff was not in default until September 4, 1961.

Late on the night of August 29th, or early in the morning of August 30, 1961, plaintiff came out on the front porch of his apartment house because of the heat and noticed that his car was missing from its parking place on the street in front of the apartment house. Plaintiff immediately called the police and was advised that his car had been re-possessed by Mid-States Investment Company. The police records showed that on 11:50 P.M. August 29, 1961, a call had been received from one Don Taylor advising that plaintiff's car had been re-possessed from plaintiff's address by Mid-States Investment Company.

The next morning, August 30, 1961, plaintiff went to the place of business of Don's Car and Financing Company and talked to Don Melching. Defendant Melching told plaintiff that his car had been re-possessed by mistake, that "they had his car" and "they would bring it back". Plaintiff's car was never returned. Plaintiff testified he had personal property in the car to the value of $100.00 to $150.00.

The police department records also revealed that plaintiff's car was taken to the police department tow-in lot on September 2nd and was released on September 12, 1961, to Mid-States Investment Company. The company's records showed a payment of $17.00 tow charge and $5.00 fine for a ticket.

The evidence showed that defendant Melching was vice-president of Don's Car and Financing Company, which was a Missouri corporation, and also a director and stockholder of the company. He had also, at one time, been employed by Mid-States Investment Company and was treasurer of that corporation. Although he tes-

tified that he did not have charge of the records of Mid-States Investment Company, he produced the records of this corporation at the trial. He was the only witness for defendants and testified that the note and mortgage given by plaintiff was sold or assigned to Mid-States Investment Company but the place provided for assignment on the back of the mortgage was blank or "left open".

Melching testified that he did not remember selling the car to the plaintiff, or talking to him about its re-possession, but from the records bearing his name or initials, he admitted that he did, in fact, sell the car to the plaintiff. The records do not show what happened to the car after September 12, 1961.

On argument both parties agreed that the most important issue in the case was raised by defendants' complaint that the award of punitive damages was beyond the jurisdiction of the trial court because this case originated in magistrate court and magistrate courts do not have jurisdiction to award punitive damages. Further, on appeal, the circuit court has only derivative jurisdiction which can not exceed that of the magistrate court from which the appeal is taken. Counsel for the parties have cited no cases from Missouri, or any other jurisdiction, directly ruling this point. Extensive research by the writer has likewise failed to reveal a ruling case.

In our consideration of this issue we are mindful of the well established principles that magistrate courts are courts of limited jurisdiction and have only such jurisdiction as is specifically conferred upon them by statute; that they have no common law jurisdiction, and that no intendment or presumption can be indulged to enlarge their jurisdiction beyond that specifically granted by statute.

The applicable statute is Section 482.090 RSMo 1959, V.A.M.S., as amended, Laws 1959, Senate Bill No. 173, (all statutory references are to RSMo 1959 and V.A.

M.S.). The pertinent part of this statute reads as follows:

"* * * magistrates shall have original jurisdiction of all civil actions and proceedings for the recovery of money, whether such action be founded upon contract or tort, or upon a bond or undertaking given in pursuance of law in any civil action or proceeding, or for a penalty or forfeiture given by any statute of this state, when the sum demanded, exclusive of interest and costs, does not exceed * * * two thousand dollars * *."

Here plaintiff's recovery totalled $1,488.50 plus costs and thus we have no issue as to the jurisdictional amount.

The important and determinative part of the statute, as above quoted, is that which grants jurisdiction to magistrate courts in "all civil actions and proceedings for the recovery of money." This unquestionably is a "civil actions * * * for the recovery of money" and thus unless other parts of the statute, as above quoted, deny jurisdiction to the magistrate court, such jurisdictional issue must be decided in the affirmative.

Defendant contends that an action for punitive damages is an action for a penalty; that in Missouri punitive damages are not recoverable by virtue of any statute, but by virtue of the common law; that, therefore, the action does not come within the statutory provision "for a penalty or forfeiture given by any statute of this state"; that magistrate courts do not have common law jurisdiction, and, therefore, the magistrate court is without jurisdiction to award punitive damages.

The case of State ex rel. and to the Use of Berra v. Sestric, 349 Mo. 182, 159 S. W.2d 786, considered the similar and almost identical statute covering jurisdiction of a justice of the peace court. This was a suit to recover delinquent sales taxes due the State of Missouri, which originated in a justice of the peace court. It was not a suit either "founded upon contract or tort" and the contention was that, therefore, the justice of the peace court was without jurisdiction because such court's jurisdiction of "civil actions and proceedings for the recovery of money" was limited to such actions as were "founded upon contract or tort." The Supreme Court gave careful and detailed consideration to this contention and concluded that the phrase "whether such action be founded upon contract or tort" did not limit the general scope of jurisdiction granted by the phrase "all civil actions and proceedings for the recovery of money." The court therefore held that the justice of the peace did have jurisdiction of suits for the collection of delinquent sales taxes, even though such suit was not founded on either contract or tort. In arriving at this conclusion, the court said: "As has been seen, the statutes, supra, expressly confer jurisdiction upon justices of the peace 'of all civil actions and proceedings for the recovery of money' within prescribed monetary limits. We think it clear that the investure of jurisdiction, under the general head 'of all civil actions * * * for the recovery of money,' comprehends and embraces actions for the recovery of delinquent sales taxes, unless it can be said that the phrase immediately following it—'whether such actions be founded upon contract or tort,' etc.,—is a qualification of that general heading so as to restrict it to the particulars enumerated. We are satisfied that such effect does not follow for reasons pointed out in the decisions of other jurisdictions (none having been found in our own) construing phraseology involving the term 'whether' in statutes quite similar to those now under scrutiny." The court's conclusion was explained in this language: "We do not think it was the intention of the Legislature, by enumerating the particulars hereinabove set out, that the jurisdiction it had just conferred on justices of the peace 'of all civil actions and proceedings for the recovery of money' should extend only to, and

no further than, the instances particularized. A suit to recover delinquent sales taxes as for debt, under Section 11437, supra, undoubtedly falls under the general head of civil action for the recovery of money; and as it does not appear that jurisdiction in such an action has been restricted or denied by any other provision of law, we are of the opinion that the justice had jurisdiction to hear and determine the cause in question."

It appears to us that the same reasoning is applicable and the same conclusion should follow in the case at bar. The clause in the statute introduced by the word "whether" covers four kinds or classes of cases. These four classes can be set out as follows: whether such action be (1) founded upon contract, (2) founded upon tort, (3) founded upon a bond or undertaking given in pursuance of law in any civil action or proceeding, or (4) for a penalty or forfeiture given by any statute of this state. Each has the same status in the statute and the same relation to the word "whether" which must be read in connection with each phrase. Likewise, each has the same relation to the clause granting general jurisdiction of "all civil actions and proceedings for the recovery of money." The Sestric case supra pointed out that the phrase "whether such action be founded upon contract or tort" was not a limit on the jurisdiction of an action for the recovery of money, and the same should be true of the phrase "whether such action be * * * for a penalty or forfeiture given by any statute of this state." In each instance the phrase introduced by the word "whether" is illustrative and descriptive of what is included in the general phrase "all civil actions and proceedings for the recovery of money." It is not a limitation on the general grant of jurisdiction contained in this last stated phrase, but merely makes certain that these various classes or types of action enumerated after the word "whether" are included within the general phrase "all civil actions and proceedings for the recovery of money."

■ Thus, even if we assume (which we do not) that punitive damages constitute a penalty not created by a Missouri statute, Section 482.490 does not deny jurisdiction to the magistrate court to award punitive damages in an appropriate case.

■ While punitive damages do have the function of punishing the defendant and are designed to deter the defendant, and others, from committing like wrongful acts in the future, they do not constitute a penalty as that word is used in this jurisdictional statute.

The case of Tabor v. Ford, 241 Mo.App. 254, 240 S.W.2d 737, was an action under the Federal Emergency Price Control Act for the recovery of triple damages for a rent overcharge. The contention was made that the magistrate court where the action was commenced did not have jurisdiction thereof because it was an attempt to recover a penalty created by federal statute, and not by Missouri statute. The opinion carefully considered whether or not such increased or multiplied damages did, in fact, constitute a penalty and concluded that the word "punishment" can not be equated with the word "penalty", and that triple damages recovered by the person overcharged did not constitute a penalty; that the statute and remedy given thereunder were remedial rather than penal in nature when applied to the person overcharged, even though it might be considered to provide for punishment only, and thus be penal, when the recovery was had by the government instead of the individual, as authorized by the statute in certain circumstances.

In arriving at this decision, the court considered many cases from other jurisdictions and said:

"The leading and often cited case of Huntington v. Attrill, 146 U.S. 657, 13 S.Ct. 224, 227, 36 L.Ed. 1123 states: 'Penal laws, strictly and properly, are those imposing punishment for an offense committed against the state, and which, by the English and American

constitutions, the executive of the state has the power to pardon. Statutes giving a private action against the wrongdoer are sometimes spoken of as penal in their nature, but in such cases it has been pointed out that neither the liability imposed nor the remedy given are strictly penal.'

"In Chattanooga Foundry & Pipe Works v. City of Atlanta, 203 U.S. 390, 27 S.Ct. 65, 66, 51 L.Ed. 241, the court holds that an action for treble damages under an anti-trust act is not a suit for a penalty, that: 'The construction of the phrase "suit for a penalty," and the reasons for that construction, have been stated so fully by this court that it is not necessary to repeat them.' Citing Huntington v. Attrill, supra.

"In James-Dickinson Farm Mortgage Company v. Harry, 273 U.S. 119, 47 S.Ct. 308, 71 L.Ed 569, the court speaking through Mr. Justice Brandeis, and relying upon the Huntington case, supra, held that a statute of the State of Texas, allowing exemplary damages to the extent of double the actual damages (for false representations) was not a penal law, and that recovery thereunder might be had in the courts of another state."

In the case of Huntington v. Attrill, 146 U.S. 657, 13 S.Ct. 224, 227, 36 L.Ed. 1123 cited and relied upon in the Tabor case, the U. S. Supreme Court described the distinguishing factors between a remedial and penal statute as follows, 13 Sup.Ct. 1. c. 228:

"The test whether a law is penal, in the strict and primary sense, is whether the wrong sought to be redressed is a wrong to the public or a wrong to the individual, according to the familiar classification of Blackstone: 'Wrongs are divisible into two sorts of species: private wrongs and public wrongs. The former are an infringement or privation of the private or civil rights belonging to individuals, considered as in-dividuals, and are thereupon frequently termed "civil injuries;" the latter are a breach and violation of public rights and duties, which affect the whole community, considered as a community, and are distinguished by the harsher appellation of "crimes and misdemeanors."' 3 Bl.Comm. 2."

The mere fact that the plaintiff may be allowed to recover more than would ordinarily be embraced in the concept of compensatory damages does not necessarily mean that a penalty is involved. Thus, in Jones v. Prudential Insurance Company of America, 173 Mo.App. 1, 155 S.W. 1106, the court had for consideration the statute giving 10% added damages to an insured against the insurance company for vexatious refusal to pay. Although this is often referred to as a penalty statute in common parlance, and even in court opinions where the precise point is not in issue, the court in the above case held that the 10% added damages were not in fact a penalty, but constituted instead punitive damages, and that because of this the requirement of what is now Section 510.270 requiring that where punitive damages are allowed they must be separately stated in the jury verdict, applied. The court held that failure of the verdict to conform to this statutory requirement was not so prejudicial as to require reversal. This case originated in a justice of the peace court and thus we do have a Missouri case wherein a justice of the peace awarded punitive damages, and the award was approved on appeal, although the case was reversed on other grounds. However, our specific issue as to the jurisdiction of the justice of the peace to award punitive damages was not presented or decided by the court.

Punitive damages can not constitute an independent cause of action. They can only be an incident of another cause of action. See 15 Am.Jur., Damages, Sec. 274. They are given, in the discretion of the jury, where the necessary elements such as malice, fraud, etc. are present.

Before punitive damages can be recovered there must be a cause of action for compensatory damages. Also, there must be a recovery of at least nominal compensatory damages before punitive damages can be awarded. See Hoagland v. Forest Park Highlands Amusement Company, 170 Mo. 335, 70 S.W. 878. However, where a case independent of punitive damages has been made, and where the evidence shows the existence of circumstances justifying punitive damages, then the plaintiff has a right to, and the court is required to, submit such issue to the jury. See Spitzengel v. Greenlease Motor Car Company, 234 Mo.App. 962, 136 S.W.2d 100.

■ Thus it appears that Section 482.090 does not specifically deprive the magistrate court of jurisdiction to award penalties not created by Missouri statutes and that, in fact, punitive damages do not constitute penalties, but are a part of the basic cause of action, in tort, asserted by the plaintiff in the case at bar, and that the plaintiff has a right in connection with and as an incident to his basic cause of action to have the issue of punitive damages submitted to the jury when the necessary factual basis exists. Thus, we are persuaded that punitive damages are an integral part of the plaintiff's "action for the recovery of money" within the specific grant of jurisdiction found in Section 482.090. In this we are buttressed by the decision of the Arkansas Supreme Court in Leep v. St. Louis, I. M. & S. Ry. Co., 58 Ark. 407, 25 S.W. 75, 1. c. 85, 23 L.R.A. 264, where the court determined that punitive damages did not constitute a penalty and held that the justice of the peace did have jurisdiction to award punitive damages (no authority was cited for this assertion) but did not have jurisdiction to award a statutory penalty.

We therefore conclude that the circuit court did have jurisdiction derivative from the magistrate court, on appeal, to award punitive damages in the case at bar.

Defendants complain that there was not sufficient evidence to sustain the verdict for the plaintiff and no evidence to connect either defendant with re-possession of the car by Mid-States Investment Company. From the evidence, as heretofore outlined, the court to which this case was tried without a jury could find that plaintiff was not in default in his payments under the note and mortgage covering his car, that the re-possession thereof was wrongful, and that defendant Melching admitted that the re-possession was mistaken, that he had the car and that he would return it. It also appears that Melching was vice-president of and actively conducted the business of Don's Car and Financing Company and was closely connected with the Mid-States Investment Company, to which payments were made by plaintiff. Although Melching claimed a sale or assignment of the note and mortgage to the investment company, the assignment "was left blank" on the note and mortgage which Melching produced in court.

■ From this we can not say that there was not sufficient evidence to charge the defendants with the wrongful acts shown and to support the verdict.

Defendants also complain of error in admitting the police court records showing re-possession of plaintiff's car. The objection made at the trial was that police court records do not come under the "Uniform Business Records Act and consequently are hearsay". The police clerk who produced the records testified in detail and without objection to their content before the record was offered, and the above set out objection made. The clerk also stated that they were contained in a book which was a part of the Kansas City, Missouri Police Department records, and it was his duty, as clerk, to maintain such records and that he was in charge thereof.

■ It seems to be defendants' position that police records, by their very nature and under all circumstances, are excluded from the operation of the Uniform Business Records as Evidence Law (Sections 490.660

et seq. RSMo 1959, V.A.M.S.) and consequently such records are hearsay and can never be admitted in evidence. Such position is refuted by Snider v. Wimberly, 357 Mo. 491, 209 S.W.2d 239. It would appear that police records can meet all of the tests and requirements for admissibility set forth in such cases as Melton v. St. Louis Public Service Co., 363 Mo. 474, 251 S.W.2d 663, Phillips v. Board of Adjustment, Mo.App., 308 S.W.2d 765, and Hancock v. Crouch, Mo.App., 267 S.W.2d 36, but we need not decide this point. The witness was permitted, without objection, to testify to all of the detailed contents of the record. It was only when the record itself was offered in evidence after the clerk had testified, that the above mentioned (and only) objection was made. Thus any error in the admission of the record itself could not be prejudicial. See White v. Hasburgh, Mo. App., 124 S.W.2d 560.

Having found no error, we affirm the judgment.

All concur.