Bill SCHERFFIUS, Plaintiff,
and
Connie Lee Scherffius, by Next Friend, Bill
Scherffius, Plaintiff-Respondent,

v.

Thomas ORR, Defendant-Appellant.

No. 8848.

Springfield Court of Appeals.

Missouri.

May 6, 1969.

Motion for Rehearing or To Transfer Denied
May 26, 1969.

Application to Transfer Denied
July 14, 1969.

Albert C. Lowes, Kenneth L. Waldron, Buerkle & Lowes, Jackson, for appellant.

Robert A. Dempster, Gene R. Yokley, Sikeston, for respondent.

TITUS, Judge.

Connie Lee Scherffius obtained a $1,500 verdict-judgment against defendant in the Circuit Court of Stoddard County on Count I of an action which is the descendant of a one-car accident that occurred on Stoddard County Route AB near 5 p.m. on Sunday, June 25, 1967. A verdict for defendant was returned on Count II of the petition brought by plaintiff Bill Scherffius. The judgment entered on Count II in accordance with the verdict has become final and does not concern us here. Connie (hereinafter called the plaintiff) contends the casualty and her damages resulted from defendant's violation of the so-called Stock Law, V.A.M.S. § 270.010, RSMo 1959. On this appeal defendant asseverates we should either (1) reverse the judgment outright because plaintiff did not make a submissible case and was guilty of contributory negligence as a matter of law, or (2) award him a new trial because the trial court erroneously received improper testimony, permitted unauthorized argument by plaintiff's counsel, and committed prejudicial error by the giving and refusing of certain instructions.

Route AB, an east-west thoroughfare, is a two-laned rolling blacktop with accompanying berms, which was dry and straight at the time and in the area of our concern. On the date of the occurrence Fred Harper was a tenant on a farm situate on the south side of the highway. A bull, 26 cows and 22 calves were also in residence. Plaintiff's father and brother testified that defendant had declared, "I own the farm. * * * These are my cattle [and] the black cows and calves are mine." To the contrary, defendant told the jury he and his son owned the farm "fifty-fifty" together with the bull, 19 cows and 17 calves, all of which were black save three. Tenant Harper laid claim to seven cows and five calves. One of Harper's calves was pure black and two of them were black with "a little white on them." All of the cattle were kept in a pasture that extended east and west from and south behind the farm house and outbuildings. The farm yard was separated from the pasture by a woven wire fence with a single strand of barbed wire on top. That portion of the pasture west of the house along the south side of Route AB was enclosed by either a three or a four strand barbed wire fence. According to Harper, his cattle "were east

of the house" on the day of the accident. There was testimony a Mr. Ward "that owns the farm immediately to the west, on the south of the [defendant's] farm [has] got a bunch of black cows and calves and steers." During the early morning of the casualty date, or late the night before, it had rained "possibly an inch or inch and a quarter * * * a good muddy rain."

The 17-year-old plaintiff, who normally drives "around 60 miles an hour," was alone while operating her father's automobile eastward on Route AB. It was daylight and the weather was clear. An unspecified but considerable distance west of the Harper residence plaintiff topped a rise and, so she says, espied a black calf "standing in the middle of the road * * * right at the bottom of the hill * * * facing me. * * * I immediately applied my brakes [but] realized I couldn't stop in time, so I swerved [to the left] to miss it [and] the car went down in the ditch and through the fence and landed out in the open field * * * off the road on the north side." The vehicle had trailed 234 feet of skidmarks on the pavement and went 36 feet off the road before it finally came to rest.

Immediately prior to the event Harper said he had driven east over Route AB to reach his home and had observed no cattle outside the pasture. About the time "I went in the house I heard a car coming, and * * * I started back out of the house. * * * [W]henever I come out of the house I heard something screak, and I guess it was the tires * * * and directly I heard a bump." Harper walked to the highway and turned west, but "I didn't get but a little ways till the girl * * * just popped right up in the road * * * she come running toward me [saying] 'A cow, a cow', [and] I said, 'No, sis, I don't see how it could have been a cow. * * * It could have been a calf.' [And although] I looked down this way, up that way and out that way * * * I never seen nothing nowhere." When asked why her utterances to Harper related to "a cow," plaintiff explained, "Well, to me, I call a calf a cow, that's just what I call it."

Approximately a mile and a half before reaching the accident scene plaintiff had overtaken and passed the Holford family automobile, which was being operated 30 to 40 miles per hour. This vehicle and another driven by Charles Edwards arrived at the casualty site just "split seconds" apart, and were stopped in time for the occupants to see plaintiff walking "up the bank" on the north side of the highway and to hear her variously exclaim to Harper "something about a cow" or "a calf" or "that there was a calf in the road." Shortly thereafter the Messer family arrived and took plaintiff home. Except for the plaintiff, no one saw a calf or other animal upon the highway, along the shoulders, in the ditches or outside the pasture at any time. Edwards testified that soon after his arrival he had noticed "some cattle in the pasture * * * approximately 150, 200 feet * * * to the south" of the road, and had discovered fresh calf tracks in the ditch along the south side of the pavement "close to where" plaintiff had gone off the highway.

The morning after the accident defendant and his son met Harper and plaintiff's father and brother at the farm to discuss the happening. Defendant recalled someone "told me about a calf being in the road * * * [a]nd I said, 'Well, we ought to look for some more clues'." Plaintiff's father and brother recounted that defendant also told them, "I believe I can take you where my calf got out," or "I think I know where my calf got out." Defendant did not categorically deny these statements, and testified, "I told them there had been a calf out, I don't know whether I specifically said it was mine or just one of the calves." The gathering then went on an inspection tour. Concerning the yard or woven wire fence to the rear of the farm house, plaintiff's father said, "We found the fence down." Plaintiff's brother related the fence was "mashed down" and there was an "opening in the fence * * * two, two

and a half feet high \* \* \* and a good two feet wide." Defendant denied this was so but admitted "that fence ain't in as good a shape as the one out on the road, but it ain't in too bad a shape." Everyone was in agreement that calf tracks were in the yard and in the ditch along the south side of the road, and that the tracks had been made after the rain. Plaintiff's brother said the tracks commenced inside the pasture back of the house and led "up to this hole [in the woven wire fence] and then there was tracks on the outside of the fence, which would be inside the yard, and the tracks went right on through the yard out to the road." Plaintiff's witnesses followed the calf's spoor (consisting of muddy hoofprints and droppings) westward from the yard and onto the pavement and south highway shoulder. The tracks, they said, went into the south ditch, to and through the south fence (where they found a loose strand of wire), and back into the pasture opposite the place plaintiff had driven off the north side of the road. At this place plaintiff's witnesses also claimed they found short black calf hairs caught on a fence barb. Defendant's witnesses denied there was any evidence the calf had been on the pavement or south shoulder, but did confirm there were calf tracks in the south ditch to "just west of where the car run off the road on the north side, and it got into the weeds and grass and we lost our tracks right there." Defendant said the black hair found on the barb was not short but long, "where a cow switched her tail," and that the road fence was tight with only "one steeple \* \* \* out of a fence post." This latter assertion was designed to contradict the testimony of plaintiff's father that the road "fence was loose, a staple was out in three different posts there at that one place."

■ For our purposes, § 270.010, supra, provides: "It shall be unlawful for the owner of any \* \* \* cattle \* \* \* to permit the same to run at large outside the enclosure of the owner of such stock, and if any of the species of domestic animals aforesaid be found running at large, outside the enclosure of the owner, \* \* \* the owner shall pay \* \* \* all persons damaged by reason of such animals running at large, the actual damages sustained by him or them; provided, that said owner shall not be responsible for any accident on a public road or highway if he establishes the fact that the said animal or animals were outside the enclosure through no fault or negligence of the owner." It has been said that in an action founded on this statute, the jury may infer negligence on the part of the owner from the fact the animal was on the highway at the time of the accident (although such an inference is not conclusive), and the burden is upon the owner to prove his animal was outside the enclosure through no fault or negligence on his part. In this case it was stipulated the Stock Law was effective in Stoddard County at the time of the casualty. Therefore, a verdict for the plaintiff was permissible if plaintiff tendered competent evidence that defendant was the owner of the black calf, that defendant had permitted it to run at large outside his enclosure and be on the highway at the time of the accident, and that plaintiff was thereby damaged, *unless* there was a proper showing the calf was outside the enclosure through no fault or negligence of the defendant. Keefer v. Hartzler, Mo.App., 351 S.W.2d 479, 480–481(1, 2); Anderson v. Glascock, Mo.App., 271 S.W.2d 243, 251.

In support of his contention that the trial court erred in not sustaining his motion for a directed verdict, and that we should reverse the case because plaintiff failed to make a submissible case, defendant urges the evidence produced was insufficient to prove "there was anyone's cow or calf on the road" at the time of the accident but, if so, there was a total failure of proof that the animal belonged to him. In attending to the resolution of these claims, we are obliged to view the record in the light most favorable to the verdict and afford plaintiff the benefit of all inferences fairly and reasonably deducible from the

evidence [Black v. Kansas City Southern Railway Co., Mo. (banc), 436 S.W.2d 19, 23(1); Hancock v. Light, Mo.App., 435 S.W.2d 695, 699(3); Smith v. Seven-Eleven, Inc., Mo.App., 430 S.W.2d 764, 766(2)], and bear in mind that circumstantial evidence need not have the quality of absolute certainty to afford a substantial or sufficient basis for deductive reasoning in the determination of civil issues. McNamee v. Ehrhardt, Mo., 433 S.W.2d 318, 321(4).

 It is true, as defendant says, that plaintiff was the only person to testify that a black calf was in the road at the time of the accident or that a black calf was outside an enclosure at any time. Nevertheless, in civil cases it is the general rule that the testimony of a single witness, if accepted as true, is ordinarily sufficient to establish any fact, even though that witness be a party to the action. Roberts v. Clevenger, Mo., 225 S.W.2d 728, 733(7), and cases cited; Cross v. United States, E.D.Va., 204 F.Supp. 644, 648(3), rev'd on other grounds 4 Cir., 311 F.2d 90; Hayden v. Chalfant Press, Inc., S.D.Cal., 177 F.Supp. 303, 310(13); Herbert v. Riddell, S.D.Cal., 103 F.Supp. 369, 389(18); Bonner v. Sudbury, 18 Utah 2d 140, 417 P.2d 646, 648(2); Alperson v. Mirisch Company, 250 Cal.App.2d 84, 58 Cal.Rptr. 178, 184 (8); 32A C.J.S. Evidence § 1043, pp. 821–823. However, we do not believe a decision on this point need rest on the testimony of plaintiff alone, for there was additional evidence (direct and circumstantial) and permissible inferences which supplement the sworn statements of this single witness. First there was the testimony of defendant's witnesses concerning the spontaneous (res gestae) statements made by plaintiff immediately after the accident, while "she was disturbed a lot" and "seemed hysterical sorta to me," to the effect there had been a cow or a calf in the road. Defendant conceded "[t]here was a calf out" of the pasture where Harper lived, and that the calf had gotten out after the rain and had been in the ditch south of the highway opposite "where the car run off the road on the north side." The jury was entitled to believe none or all of the testimony of any witness or to accept it in part or reject it in part [Bell v. Pedigo, Mo., 364 S.W.2d 613, 616(4)], and was at liberty to believe the calf had been not only in the ditch but also upon the road, and that, as evidenced by the spoor traced by plaintiff's witnesses, it had made a hasty re-entry into the pasture through the loose road fence after having initially left the enclosure behind the house through the hole in the woven wire fence. The discovery of short black hairs on the barbed wire roadside fence, if believed, would attest to the fact that the color of the calf was black. Defendant argues that since more than 24 hours had elapsed between the time the rain ceased and the time the calf tracks were discovered by him, his son, plaintiff's father and brother, and Harper, such evidence proves only the tracks were made subsequent to the rain and, short of speculation and conjecture, the jury could not determine whether the tracks had been made before, at the time of, or after the accident. This argument ignores the testimony of Charles Edwards who arrived at the scene immediately after the occurrence, and who said he had observed fresh calf tracks in the south ditch which "had been made * * * after the rain that morning or the night before." When the plaintiff's assertions and all the foregoing evidence is considered together, we cannot hold otherwise than that the record was sufficient to permit the jury to find and believe there was, in fact, a black calf in the road at the time of the casualty in question.

 We also find it necessary to disagree with defendant's insistence that there was no evidence the defendant owned the black calf and that defendant's alleged admissions against interest do not merit credence because defendant, not being a witness to the accident, could not have known it was his calf which plaintiff says was on the highway. "A party's admission against interest of a material fact relevant to an issue in the case [including admissions as

to the ownership of personal property, Kidd v. Kidd, Mo.App., 216 S.W.2d 942, 946(9); 31A C.J.S. Evidence § 317 at p. 807] is competent against him as substantive evidence of the fact admitted. And for a statement by a party to be competent as an admission against interest, it is not necessary that it be a direct admission of the ultimate fact in issue, but it may be competent and of probative value if it bears on the issue incidentally or circumstantially." Gaddy v. State Board of Registration For Healing Arts, Mo.App., 397 S.W.2d 347, 354(5, 6). Plaintiff's evidence of defendant's reported statements that "These are my cattle. * * * The black cows and calves are mine. * * * I believe I can take you where my calf got out * * * I think I know where my calf got out," may have constituted an oblique method of proving a material fact in issue, but such admissions, nevertheless, were against the defendant's interest and "incidentally and circumstantially" provided competent evidence of probative value on the issue of ownership. Although there is nothing in the record which suggests defendant was possessed of any personal knowledge the calf in question was his and the jury admittedly was not advised how he came by the conclusion he was the owner of the animal, an extrajudicial admission of a litigant against his interest, although it be in the nature of a conclusion, is admissible whether the admission was based on personal knowledge or hearsay—where a party believes a fact upon evidence sufficient to convince him of its existence, even though it relates to a fact concerning which he could have no personal knowledge, his declaration of the existence of that fact, if against his interest, is competent evidence against him. Such evidence, though not conclusive and of a very unsatisfactory character, is for the jury to weigh and accord such value as they see fit. Liebow v. Jones Store Company, Mo., 303 S.W.2d 600, 664; Grodsky v. Consolidated Bag Co., 324 Mo. 1067, 1076, 26 S.W. 2d 618, 621; Sparr & Green v. Wellman, 11 Mo. 230, 234–235(2); Mayhew v. Travelers' Protective Ass'n of America, Mo.App., 52 S.W.2d 29, 31–32(2), treated further on other grounds in Brown v. Metropolitan Life Insurance Company, Mo.App., 317 S.W.2d 651, 653–654(1) and, Mo., 327 S.W. 2d 252.

■ In the form prescribed by MAI 28.01, the jury was charged, per Instruction No. 5, regarding plaintiff's alleged contributory negligence if it believed "plaintiff * * * either: failed to keep a careful lookout, or drove at an excessive rate of speed." As he did in the trial court, defendant here asserts we should declare plaintiff guilty of contributory negligence as a matter of law for the same reasons. The only testimony as to lookout is to be gleaned from plaintiff's statements that she was "paying close attention" to her driving, saw the calf "just as I got to the top of" the hill, and apparently continued to observe it until "I swerved to miss it." We are certain the defendant does not presume to charge plaintiff with the duty of seeing the calf before it was physically possible for her to do so or before she reached the top of the hill west of where the calf was standing at the bottom of the grade. The Committee's Comments on MAI 28.01 and 17.05, at pages 230 and 122 in MAI, say that submitting the defense of contributory negligence "when not supported by the record is, of course, reversible error," and that it is error for the trial court to submit to the jury the issue of failure to keep a lookout unless there is evidence from which the jury could find the party charged "could have seen the object in question sooner than he did." Since the only evidence in this case (plaintiff's testimony and the length of the skidmarks made by the tires) reveals plaintiff did see the calf at the first opportunity she had to do so, it appears probable the trial court erred in defendant's favor by including plaintiff's averred failure to keep a careful lookout in Instruction No. 5. Hawkeye-Security Ins. Co. v. Thomas Grain Fum. Co., Mo.App., 407 S.W.2d 622, 625(2, 3). Consequently, if there was not sufficient evidence to make a jury issue on the matter

of lookout, it necessarily follows neither the trial court nor this tribunal could declare plaintiff negligent on that score as a matter of law. We are constantly reminded that the question of negligent speed depends upon the circumstances, and that contributory negligence cannot be ruled as a matter of law unless, from all the evidence and permissible inferences viewed in the light favorable to the plaintiff, it can be said that the only reasonable conclusion is that plaintiff was negligent and such negligence was a proximate cause of the injury. Johnson v. Bush, Mo.App., 418 S.W.2d 601, 605(6). In this instance it was daylight, the road was straight, the pavement was dry, there is no claim plaintiff was driving in excess of the lawful speed limit (V.A.M.S. § 304.010, subd. 2(2), RSMo 1959), and plaintiff was not required to anticipate someone would negligently permit a calf to be loose on the highway. Kroger Company v. Doane, 8th Cir., 280 F.2d 1, 5. The failure to slow upon approaching the crest of a hill may constitute negligence (60 C.J.S. Motor Vehicles § 296, p. 702), but it cannot be said that such failure is negligence as a matter of law under all circumstances. In Lyon v. Southard, Mo., 323 S.W.2d 785, the issue was negligent speed. The accident occurred in the nighttime on a two-laned bituminous pavement when defendant's car collided with a vehicle which was stopped 300 feet west of the crest of a hill after having left skidmarks of 258 feet. At page 787 the court said: "We rule that under the evidence it was a jury question whether [defendant] was negligent and whether such negligence was the cause of the collision." Based on the authority of Lyon (re speed) and Hutson v. Highley, Mo. App., 384 S.W.2d 278 (re lookout), we are of the opinion plaintiff's contributory negligence, if any, was a matter for jury determination and not a matter of law for the court to decide.

Particular attention should be given to the fact that our conclusions on defendant's assertions the plaintiff did not make a submissible case and was guilty of contributory negligence as a matter of law resulted because we were required to indulge plaintiff with the evidence and inferences most pleasing to her cause. Turning now to consider defendant's claim the trial court erred by receiving improper testimony, plaintiff is not entitled to such indulgence. Haymes v. Swan, Mo.App., 413 S.W.2d 319, 326(13). It must be remembered the defendant has denied from the very first that at the precise time of the accident a calf was on the roadway and its presence there was the cause of the accident. Plaintiff, via her court testimony and reported res gestae statements, is the only person to say that a calf was on the roadway and that the calf caused her to swerve off the pavement. Defendant, in support of his denial, produced witnesses who were at the site immediately before and after the accident and said no animal was on or near the highway or outside of any enclosure. Although some of defendant's witnesses testified "there was a calf out," the essence of their further relatings was that the calf had not gotten onto the roadway as plaintiff claimed, and they nowhere concede the calf was loose at the time of the casualty. One of defendant's special charges of trial court error pertains to the reception on cross-examination of certain testimony given by Lester Enderle, a Missouri State Highway patrolman. In the following excerpt Mr. Dempster (the cross-examiner) speaks for the plaintiff, and Mr. Lowes for the defendant:

"MR. DEMPSTER: And I believe that somebody had told you though that there was a calf out on the highway and this car swerved to miss it, is that right? A Yes, sir.

"MR. LOWES: Object to the hearsay, Judge.

"MR. DEMPSTER: This is his witness.

"THE COURT: Objection overruled. * * *

"MR. DEMPSTER: As I understand it, Trooper, your investigation reflected that there had been a calf out there and this driver had turned over in the field to miss the calf?

"MR. LOWES: That's a conclusion, Judge, we object to that.

"THE COURT: The objection is over-ruled.

"THE WITNESS: I was told that this is what happened.

"MR. DEMPSTER: That this is what happened?

"MR. LOWES: We move that answer be stricken.

"THE COURT: Denied."

■ It is so obvious the matters contained in the questions asked by plaintiff's counsel and the answers given by the highway patrolman were conclusions and hearsay, no citation of authority is required. The questions and answers referred to post-accident statements made by a person or persons unknown and they were employed testimonially, that is, affirmatively, to prove not only that a calf had been on the highway but that the accident resulted from plaintiff swerving the car to miss it. The hearsay was employed as independent proof of two principal, most vital issues in the case; it was "not merely cumulative evidence but corroborative evidence." Meyers v. Smith, Mo., 300 S.W.2d 474, 478. "We need waste no time or space in establishing the fact that hearsay testimony, unless it be within some recognized exception [and this is not], is inadmissible. The reason is, of course, that testimony offered as affirmative proof of the fact asserted should not come from a witness [especially an unidentified witness] who is not present and subject to cross-examination * * * and we fail to understand why the evidence was admitted. * * * We deem this testimony to have been wholly incompetent. Moreover, it appears to have been offered rather insistently

[and repeatedly] in the face of the objections * * * for the conscious purpose of building up plaintiff's case; it was most certainly not inadvertent. * * * [T]here were specific objections on the ground of hearsay, and the objectionable statements were hearsay in their entirety, even if they also incorporated conclusions. * * * As to [plaintiff's argument] that the evidence was cumulative and its admission discretionary: * * * This hearsay testimony was not merely cumulative * * *; it constituted an attempt to corroborate [plaintiff] and, being hearsay, its admission may not conceivably be justified on any theory of discretion. * * * The trial court does have some discretion in the admission and exclusion of purely cumulative evidence. State v. Harris, 334 Mo. 38, 64 S.W.2d 256. [But] this controverted testimony * * * constituted an attempt to bolster, corroborate, and add to [plaintiff's testimony and her] res gestae statement [about the calf and her need to turn to miss it] and, since it was based upon the credibility of [an unknown] witness not present and concerned a most vital matter, it was prejudicial. The admission of this testimony was prejudicial error." Shaw v. Terminal Railroad Ass'n of St. Louis, Mo., 344 S.W.2d 32, 34–35(1), 93 A.L.R.2d 265, 270–271. Most members of the Missouri State Highway Patrol deservedly are held in high esteem by the citizens who compose the juries in our courts, and one would be blind to reality if he denied a patrolman's testimony is often given more weight by jurors than that afforded evidence spoken by ordinary laymen. Myers v. Moffett, Mo., 312 S.W.2d 59, 64. We are not being critical of Trooper Enderle, for he simply answered the improper questions of plaintiff's counsel suffered by the erroneous rulings of the trial court over defendant's objections. What we do say is that the quoted hearsay testimony of the patrolman on cross-examination undoubtedly served as the "clincher" in corroborating plaintiff's testimony and was prejudicial to the defendant. This conclusion on our part makes it unnecessary for us to consider and

**128**

rule on defendant's other objections. The judgment nisi on Count I of the petition is reversed and the cause is ordered remanded for a new trial as to that count on all issues.

HOGAN, P. J., and STONE, J., concur.