**Francis H. RICHARDSON and Claude L. Schenck, Plaintiffs-Respondents,**

v.

**Jerry D. LIGGETT, Defendant-Appellant.**

No. 25164.

Kansas City Court of Appeals, Missouri.

Feb. 2, 1970.

Rehearing Denied April 6, 1970.

John S. Newhouse and Norman Humphrey, Jr., Independence, for appellant.

R. A. Kelpe, Kansas City, for respondent.

CROSS, Judge.

This is an action for unlawful detainer, as defined by clause three of Section 534.-030 V.A.M.S., to recover possession of real estate. As required by Chapter 534 V.A. M.S., which provides the remedy here pursued and prescribes procedures therefor, suit was commenced in magistrate court. In the complaint filed plaintiffs alleged in substance that on July 1, 1966, they became and have since remained lawfully entitled to possession of certain described real property (a dwelling house and premises);

that on the named date "the defendant wrongfully and without force, by disseizen, continued in possession of said premises and has ever since held and still holds possession thereof wrongfully and unlawfully"; that thereafter plaintiffs made due demand of defendant, in writing, for possession of the premises; and, that defendant has refused and neglected to quit and deliver possession. Plaintiffs prayed judgment for possession of the premises and $150.00 damages. After hearing evidence the magistrate found the issues in favor of defendant and against plaintiffs, and sustained defendant's motion to dismiss the complaint. Plaintiffs appealed.

On April 8, 1968, the circuit court tried the cause de novo, without a jury, and rendered judgment that plaintiffs have restitution of the premises and recover of defendant $100.00 per month for rents and profits (double the amount found to be the monthly value) pending restitution. Recovery of damages was denied. Defendant has appealed to this court. The only real question presented is whether plaintiffs had actual possession of the property at the times encompassed by the pleadings and was wrongfully dispossessed by defendant. As required by Civil Rule 73.01 our review will be de novo, on both the law and the evidence. The trial court will be accorded deference in matters of credibility.

The real estate involved is a dwelling house and premises of about three acres located in a subdivision in Blue Springs, Jackson County, Missouri. From 1948 to 1958 defendant and his parents lived on the subject property. In July of 1958 both parents died and it appears that defendant acquired title to the property by inheritance upon demise of his mother, who survived his father by a few days. On April 16th, 1965, through a realty agent, defendant negotiated a loan of $2,250.00 for which he gave a negotiable installment note, and as security he executed and delivered a first deed of trust on the property in controversy. No installment of the principal was ever paid by defendant.

Thereafter, on March 28, 1966, defendant conveyed, by warranty deed, all his right, title and interest in the property to one Claude L. Conard for the purchase price of $700.00 and other considerations. The warranty deed recited that the conveyance was "subject to deed of trust of record which unpaid balance Grantee(s) assume and agree to pay", and contained no reservations as to possession or occupancy of the premises.

On July 1st, 1966, Claude L. Conard and his wife conveyed all their right, title and interest in the property to Francis H. Richardson and Claude L. Schenck (plaintiffs) by warranty deed, duly executed and delivered. The instrument particularized that the transfer was subject to the Liggett deed of trust and note dated April 16, 1965, and all unpaid taxes and encumbrances of record. Thereafter plaintiffs paid all principal and interest due under the Liggett note; also all back taxes and unpaid insurance premiums which had accrued while defendant was the record owner. The note and mortgage were duly assigned to plaintiffs by the last previous holder. As of trial date no other encumbrance of record was outstanding as against plaintiffs' title.

■ The first of four points briefed by defendant charges that plaintiffs' complaint is defective in form and substance because it is not in conformity with clause three of Section 534.030 V.A.M.S., which defines "unlawful detainer" in language as follows: "* * * (W)hen any person wrongfully and without force, by disseisin, shall *obtain* and continue in possession of any lands, tenements or other possessions, and after demand made, in writing, for the delivery of the possession thereof * * * shall refuse or neglect to quit such possession, such person shall be guilty of an unlawful detainer." (Emphasis added.) Plaintiffs' complaint is faithfully patterned upon the quoted statute except that it omits the word "obtain"(ed) which we have ital-

icized. Defendant argues that an unlawful detainer action under clause three is available only against a person who both *obtains* and *continues in possession of* the lands in question, and that since the complaint fails to allege that defendant "obtained" possession, it states no cause of action. This argument is to no avail because the complaint employs language which of itself connotes that defendant "obtained" possession. We refer to the phrase "by disseisen". The word "disseisen" is defined by Bouvier's Law Dictionary, Baldwin's Century Edition, as "a privation of seisen" or "a usurpation of the right of seisin and possession, and an exercise of such powers and privileges of ownership as to keep out or displace him to whom these rightfully belong." The same question was before this court in Aubuchon v. Foster, 202 Mo.App. 225, 215 S.W. 781, a suit for unlawful detainer under the then second clause of the statute which was identical with present clause three of Section 534.-030. The complaint alleged that defendant "willfully and wrongfully holds possession" of land involved but did not allege that defendant "obtained" possession. Even the phrase "by disseisin" was absent from the pleading. Notwithstanding, the complaint was held sufficient. This result is consistent with our opinion in Kansas City Building and Loan Ass'n. No. 6 v. Harding, Mo.App., 58 S.W.2d 795, where in ruling a complaint of unlawful detainer sufficient we commented: "Complaints made in a justice (now magistrate) court are viewed with leniency, and, if such a complaint fairly comprises the elements of an unlawful detainer, it will be held to be sufficient. The complaint in this case is made in the usual manner and is ample to meet a substantial compliance with all necessary requirements, and is sufficient to confer jurisdiction and support the judgment rendered." Also see Utt v. Winfrey, Mo.App., 235 S.W. 185. We, likewise, find the complaint in this case to be sufficient.

Defendant's second point raises the real issue in dispute. Asserting no claim to any vestige of ownership or title, defendant contends that he has had continuing possession of the property since 1948—even after he conveyed it to Conard, and the Conards in turn conveyed it to plaintiffs. Therefore, he argues, unlawful detainer is not an appropriate remedy and can not be maintained by plaintiffs because it is barred by Section 534.300 V.A.M.S.,[1] and because plaintiffs never came in possession of the property. Defendant frankly states that "respondents have chosen the wrong action" and concedes that a suit in eject-ment might "conceivably" be available to plaintiffs. It is plaintiffs' position that defendant surrendered possession when he conveyed the premises to Conard, and that possession thereafter has been vested successively in Conard and themselves.

Plaintiff Schenck gave testimony tending to show that the house in question was not habitable and that defendant was not in possession of it. Prior to obtaining title, the witness had made several trips to the property. On none of those occasions was Liggett found on the premises. Once, while passing by the premises in an automobile he saw Liggett there working on a car. That was about a year before Liggett conveyed the property. After receiving the Conards' warranty deed, plaintiffs went promptly upon the premises "to take possession of the property" and clean it up. They did not "find anyone living in the house." The building was in a very dilapidated condition and needed painting, the windows were broken out, the weeds had grown six to eight feet tall, and the sur-

---

1. Section 534.300 V.A.M.S. reads as follows:

"The provisions of this chapter shall not extend to any person who has had the uninterrupted occupation or been in quiet possession of any lands or tenements for the space of three whole years to-gether, immediately preceding the filing of the complaint, or who has continued three whole years in the peaceable possession after the time for which the premises were demised or let to him, or those under whom he claims, shall have expired."

rounding yard was in a "terrible" condition, full of trash and old sheds. The main part of the house was locked but the back door and back part of the house were open, and there were indications that children had been playing there. The "lights" had been turned off and (as shown by defendant's testimony) the dwelling had been without heat for three years. Plaintiffs later returned to the property to clean up the premises and mow the weeds, after being notified to do so by the City of Blue Springs. That occasion was the first and only time they found defendant on the premises. Apparently a controversial discussion arose between the parties at that time and counter-demands to leave the premises were made. Plaintiffs stopped the mowing and peacefully took their departure. Witness Schenck testified on cross-examination that Mr. Conard had informed him that he (Conard) was previously in possession of the property.

Anticipating the filing of this suit, plaintiffs made numerous attempts to serve written demand for possession upon defendant, but they were unable to find him on the premises, or elsewhere. Resorting to an alternative method sanctioned by the statute, Section 534.050, and in accordance therewith, plaintiffs posted their demand and notice to vacate on the dwelling at the premises, mailed a copy to defendant's attorney after conferring with him on the telephone, and proceeded to file this action. Efforts to find defendant and serve him with summons were equally unavailing, although plaintiffs and the officer attempting the service went back to the property several times looking for him. The officer finally returned the summons non est and defendant was summoned by the posting of notices as ordered by the magistrate under provisions of Section 534.090 V.A.M.S. A notice was posted on the property involved. Defendant later entered his appearance in the magistrate court by his attorneys. Sometime during their searches for defendant, plaintiffs discovered a notice defendant had posted on the premises stating that he was owner of the property and that trespassing was forbidden.

Defendant testified that by trade he was a self employed car mechanic and had worked in Kansas City for some two or three years. Although during that time he "lived" at various enumerated places and addresses in Kansas City, he claimed that his "residence" and mailing address were maintained at the property in Blue Springs. He stated that once or twice a week he made trips by automobile to the property in Blue Springs. He explained that since he has no driver's license, he employs a man named "Quinlan" (whose first name and exact address he could not recall) to drive him back and forth on those trips and pays him at the rate of $4.-00 per trip. Defendant insisted that Conard never took possession of the premises and that he (defendant) was never out of possession.

On cross-examination it was brought out from defendant that on an occasion after he had conveyed the property to Mr. Conard, defendant and Mr. Newhouse, his attorney, made a "trip" to the office of Mr. Michael Konomos, an attorney who represented Mr. Conard, and that Mr. Conard was also present. Questioning defendant as to the purpose of the interview with Mr. Konomos, plaintiffs' counsel inquired and defendant answered as follows:

"Q. I am asking you if a quit claim deed was requested by you and Mr. Newhouse, or either one of you, of Mr. Konomos from Mr. Conard to whom you had deeded the property?

A. Yes, Mr. Newhouse—"

The answer was interrupted by an objection interposed by defendant's counsel and upon reinterrogation defendant gave contrary answers and disclaimed any knowledge or memory of such request for a quit claim deed being made.

Mr. Konomos was called as a rebuttal witness by plaintiffs. He identified himself as the attorney Mr. Conard had con-

sulted with reference to the transaction in which defendant conveyed the property to Mr. Conard by warranty deed. He testified that subsequent to the conveyance defendant and defendant's attorney, Mr. Newhouse, came to his office (as defendant had stated) and conversed with him for about half an hour. Mr. Conard was then present. Questions were asked of the witness and answers given as here quoted:

"Q. And let me ask you, if you will, please, do you recall any request being made of you and your client with regard to deeding this property back to Mr. Liggett, the defendant here?

A. My good friend, John Newhouse, in the presence of this gentleman and the other people, in substance, I can almost quote him, he said, 'Mike, we want you to give us a quitclaim deed to this property.' And I said, 'John, I can't do that. 1 can't advise my clients to do that.'

Q. When you said quitclaim deed to this property, to whom, Mr. Konomos, in whose favor?

A. In favor of John Newhouse's client.

Q. That was Mr. Liggett who was present there at the time?

A. That is correct, sir."

Cross-examination of Mr. Konomos by defendant's counsel elicited the following quoted testimony:

"Q. Do you know of your own knowledge if your client was ever in possession of that property?

A. If he was in possession of it?

Q. Yes.

A. Yes.

Q. How do you know that?

A. Well, because Mr. Liggett came to me I think once or twice, either before or after that, trying to establish attorney and client relationship and I told

him I just couldn't do that, that he had a lawyer. He was dissatisfied, and I said, 'You go to him.' But it was admitted that the property belonged to my client, that he had possession.

Q. Who admitted this?

A. Mr. Liggett.

Q. He told you that Conard was in possession?

A. That's right, sir.

Q. When was this?

A. I don't remember the exact time, sir. It's been months ago.

Q. Was this prior to this meeting that you have testified to on direct?

A. Prior and at the time also, the discussion when John was present, John Newhouse."

Defendant did not offer to testify in surrebuttal and deny the truth of the immediately foregoing quoted testimony of Mr. Konomos.

Among other findings of fact on which the judgment for restitution was based (later set out herein) the trial court found that "Claude L. Conard was in actual possession of the above described real property, while he was the title holder thereof" and that "defendant Jerry D. Liggett after he conveyed the title to said premises, together with the possession to Claude L. Conard, the defendant Jerry D. Liggett re-entered said premises and has retained possession thereof." Those findings are materially significant to our evaluation of the evidence because they clearly show the trial court's view as to the credibility of key witnesses. It is apparent that the court disbelieved defendant's assertions that he had never surrendered possession of the property and that Conard was never in possession of it. It is equally apparent that the court accepted as credible the testimony of Mr. Konomos that defendant made admission to a contrary state of facts. Giving due deference to the trial

judge, as we must do in this conflict of credibility, we necessarily adopt his manifested views on that question and proceed with our analysis of the evidence.

There are facts and circumstances in the record which strongly tend to establish that defendant had quit and surrendered possession of the property when he conveyed it to Conard on March 28, 1966, without reservation of any right or interest therein. His own testimony indicates he had been "living" in Kansas City for as long as three years prior to the date of trial (April 8, 1968). The physical condition of the property was such as to indicate it had been abandoned. We refer primarily to the lack of heat in the house for some three years, the discontinuance of electrical service, the broken windows and the rank growth of vegetation on the trash-littered premises. Abandonment of the property by defendant is further suggested by his failure to pay installments on his mortgage note, insurance premiums, and property taxes accruing since 1964; also by the fact that process servers who made numerous trips to the property were unable to find him there. Any remaining doubt that defendant surrendered possession of the property when he conveyed it to Conard is effectively disspelled by the evidence of defendant's admission against interest—his statement that Conard "was in possession of the property". As narrated by Mr. Konomos, the utterance was made in the presence of Mr. Konomos, Mr. Conard and Mr. Newhouse, defendant's counsel, and was made subsequent to defendant's conveyance to Mr. Conard. We believe the statement was in fact made by defendant, not only because we accept Mr. Konomos as a credible, disinterested witness, but also for the even more convincing

circumstance that defendant did not deny he made the statement. The admission constitutes substantial, if not conclusive evidence of the facts it communicates. "(A)n admission against interest comprises any statement of a party inconsistent with his claim in an action and therefore amounting to proof against him * * *". Hoeffner v. Western Leather Clothing Co., Mo.App., 161 S.W.2d 722. Such admissions are "admissible in evidence and are competent as evidence of the existence of the facts which they tend to establish." State ex rel. Taylor v. Anderson et al., 363 Mo.Sup., 884, 254 S.W.2d 609. For all the reasons we have stated above, we find that defendant had surrendered possession of the premises and that Mr. Conard had the property in his possession prior to and at the time he conveyed it to plaintiffs by warranty deed.

It is not apparent from the record when defendant first re-entered the premises to effect his claim of possession —whether during the period of Conards' ownership and possession, or after the property was conveyed to plaintiffs. For that matter, insofar as plaintiff's right to maintain this action is concerned it is immaterial which was the case. If defendant, after surrendering possession to Conard, unlawfully re-entered upon and detained the property during Conards' ownership, plaintiffs, as Conards' grantees, were entitled to the same remedy afforded Conard by Chapter 534 V.A.M.S. It is so provided by Section 534.260.[2] If defendant unlawfully entered and detained the property after plaintiffs obtained title and entered into possession, the remedy would have accrued in their own original right. In this connection, it is urged by defendant that plaintiffs have never had the quality

2. Section 534.260 V.A.M.S. reads as follows:
    "Heirs, devisees, grantees and assigns of any lands, tenements or other real possession, and executors and administrators in charge of lands of deceased persons, shall be entitled to the same remedies against persons guilty of forcible entry and detainer or unlawful detainer of such lands, tenements or other real possessions, before the descent, devise, grant or assignment thereof, or the granting of letters, as the ancestor, devisor, grantor, assignor or intestate was entitled to by virtue of this chapter."

of actual possession necessary to maintain an action for unlawful detainer. Neither the facts or the authorities support this view. It is the evidence that plaintiffs entered upon the premises promptly after receiving their deed of conveyance and undertook to renovate their property—the first of several such visits being made on the day following delivery of the deed. Later they moved equipment to the property and attempted to mow it and clean it up, as the city had officially notified them to do. We consider those physical acts sufficient to indicate plaintiffs' intention to take and hold possession of the property and to constitute *actual* possession of the premises within the meaning of the unlawful detainer statute. It has long been the rule in this state that "any act done by himself (the plaintiff) on the premises indicating an intention to hold the possession thereof to himself will be sufficient to give him the actual possession." It was so held in Bartlett v. Draper, 23 Mo. 407, where plaintiff's claim for possession was based on the mere act of hauling fence posts to the land preparatory to erecting a fence. In Meriwether v. Howe, 48 Mo.App. 148, 155, the court stated that "The law is well settled that overt acts indicating dominion and purpose to occupy, and not to abandon, the premises will constitute actual possession." And, in Robinson v. Ramsey, 190 Mo.App. 206, 176 S.W. 282, the court said: "That plaintiff need not reside on the land, or actually occupy any building thereon, or even have it inclosed, in order to have actual possession sufficient to maintain this action is well settled. (citing cases) * * * What is actual possession is a mixed question of law and fact, and varies in different circumstances, depending on the character and condition of the property. The question of intent, connected with overt acts, is of much importance." Also see Koger v. Ward, Mo.

App., 243 S.W. 413; Bradley v. West, 60 Mo. 59 and Miller v. Northup, 49 Mo. 397, 400.[3]

The trial court made extensive findings of fact. Omitting formal matter and nonessential recitals, those findings are stated in substance, as follows: (1) that defendant on March 28, 1966, conveyed the property in controversy to Claude L. Conard by warranty deed; (2) that prior to that conveyance legal title was vested in defendant; (3) that Conard and wife conveyed all their right, title and interest in the property to plaintiffs; (4) "that Claude L. Conard was in actual possession of the above described real property, while he was the title holder thereof."; (5) "That defendant Jerry D. Liggett after he conveyed the title to said premises together with the possession to Claude L. Conard, * * * re-entered said premises and has retained possession thereof."; (6) that on February 23, 1967, plaintiffs made written demand upon defendant for possession of the premises by posting notice after being unable to find defendant on the premises; (7) that defendant thereafter continued to retain possession of the property after demand for possession was made and was in possession when the cause was heard on April 8, 1968; (8) that plaintiffs have paid taxes on the subject real estate, including state and county real taxes, city taxes due the city of Blue Springs, together with sewer taxes for the years 1965, 1966 and 1967; (9) that on April 16, 1965, defendant obtained a loan of $2,250.00, secured it (the note) by a deed of trust on the property, and that the loan became delinquent October 17, 1965; (10) that plaintiff Schenck purchased the note and deed of trust for a consideration of $2,458.07 representing prior and delinquent interest; (11) that defendant has paid no interest on the loan or any part of the principal; (12) that the property has a reasonable rental

3. Missouri decisions are in accord with the rule stated in 36A C.J.S. Forcible Entry and Detainer § 11, p. 973, that "An entry, coupled with such acts of open and visible ownership as clearly indicate his intention to take and hold permanent possession under claim of right to exclusive possession, will be sufficient to enable him to maintain this form of action to repel an unlawful intrusion."

value of $50.00 per month. We approve the trial court's findings of fact and adopt them as supplementary to our own findings.

It is our conclusion that plaintiffs have sustained their burden of proof to establish substantially the facts alleged in their complaint. Specifically, we rule that defendant is guilty of an "unlawful detainer", as that offense is defined by Sec. 534.030, and that plaintiffs are entitled to recover possession of their real estate and monthly rentals as the trial court has adjudged.

Defendant's third point has challenged the correctness of the trial court's conclusion of law No. 5 which reads as follows: "The Court finds that the defendant by the execution and delivery of the Missouri Warranty Deed to Claude L. Conard conveyed all his rights, title and interest, including possession thereof, to Claude L. Conard." It is immaterial to our decision whether or not the trial court erred in concluding that defendant conveyed *possession* of the realty to his grantee, by executing and delivering a warranty deed. Since our decision is not founded on that legal premise, no discussion of it is necessary.

Defendant's final point is a complaint that the trial court erred in its findings of fact numbered 4 and 5, both of which appear twice hereinabove. The point merits no consideration since we have heretofore determined the issues it attempts to raise again.

The judgment is affirmed.

All concur.