**BOLIVAR FARMERS EXCHANGE, a Corporation, Plaintiff-Respondent,**

v.

**W. W. EAGON, Defendant-Appellant.**

No. 9002.

Springfield Court of Appeals. Missouri.

April 23, 1971.

Theo G. Scott, Buffalo, for defendant-appellant.

Douglas & Douglas, Elvin S. Douglas, Kerry D. Douglas, Bolivar, for plaintiff-respondent.

STONE, Judge.

In this jury-tried suit on account by plaintiff Bolivar Farmers Exchange, a corporation, defendant W. W. Eagon appeals from the judgment entered upon a unanimous jury verdict for plaintiff in the aggregate sum of $4,460.79, including interest of $398.45 upon the principal sum of $4,062.34.

Defendant was a farmer-dairyman who resided on a 164-acre farm (the home place) east of Bolivar in Polk County, Missouri, and also owned two other farms (of undisclosed acreage) known as "the Noyes place" and "the Stephens place." He had done business with plaintiff for several years and on October 9, 1967, had issued his check for $2,133.78 in payment of his account to that date. The account in suit consisted of subsequent charges on fifteen dates during the period from October 13, 1967, to January 26, 1968, all of those charges (excepting only one of $32.29 on November 16, 1967, for barbed wire and staples) having been

for bulk hog feed allegedly sold and delivered at defendant's instance and request. Asserting that plaintiff had failed to show that such hog feed and materials had been furnished at his "special instance and request," i. e., had been ordered by him, defendant's primary and principal complaints here are that the trial court erred in overruling his motion for a directed verdict at the close of the evidence [V.A.M.R. 72.01; V.A.M.S. § 510.280] and in denying his after-trial motion to set aside the judgment for plaintiff and to enter judgment for defendant in accordance with the aforesaid motion for a directed verdict. V.A.M.R. 72.02; V.A.M.S. § 510.290. With the case in this posture, our factual review should and does give appropriate recognition to the basic principle that, in determining the submissibility of plaintiff's case, we must consider the evidence in the light most favorable to plaintiff, must accord to it the benefit of all inferences fairly and reasonably deducible from the evidence, and must disregard defendant's evidence except insofar as it may aid plaintiff's case. Prentzler v. Schneider, Mo. (banc), 411 S.W.2d 135, 139(6); Pavyer Printing Machine Works v. South Side Roofing Co., Mo.App., 446 S.W.2d 445, 448(1); Walker v. Massey, Mo. App., 417 S.W.2d 14, 16(1).

During the period here relevant, plaintiff's office in Bolivar was staffed with five employees, to wit, Howard Hayter, the manager for "better than twenty years," and four bookkeepers, namely, Inez Marshall, the supervisor, Audrey Skidmore and Winfred Taylor, both so employed for twenty-one years, and Genevie Cowan, so employed for six years. Manager Hayter and supervising bookkeeper Marshall testified in detail concerning plaintiff's bookkeeping system and the procedure followed in handling, filling and recording orders for bulk feed, most of which were "called in by phone." The office employee taking an order initially recorded it on a "scratch ticket," which was placed on a spindle or clipboard in the office. In due course, one of plaintiff's bulk truck drivers picked up

the scratch ticket and took it to plaintiff's elevator, where the empty truck was weighed, the truck was loaded in accordance with the order entered on the scratch ticket and again weighed, and a "scale ticket" recording the gross, tare and net weights was completed and signed by the weigher. Returning to plaintiff's office, the bulk truck driver presented the scale ticket to one of the bookkeepers, who prepared a sales ticket in triplicate, showing the date of purchase, the name of the purchaser, the kind, quantity and price per hundredweight or bushel of the feed purchased, and the total amount of the charge therefor. The driver then proceeded to deliver the load of feed to the designated location, where a copy of the sales ticket (with the scale ticket attached thereto) was given to the purchaser or his "hired hand" if available and, if not, was "put in the mailbox." The other two copies of the sales ticket were retained in plaintiff's office, where one of them was posted to the purchaser's sheet in the general ledger. The sales and scale tickets reflecting and supporting all of the charges for bulk hog feed in the account under consideration were identified and received in evidence; and the only other charge, i. e., that of $32.29 on November 16, 1967, for barbed wire and staples, was reflected and supported by a sales ticket "from [plaintiff's] hardware department . . . based on a purchase across the counter," which was signed by defendant and likewise received in evidence.

During the trial on September 29, 1969, supervising bookkeeper Inez Marshall testified on direct examination that she recognized defendant's voice over the telephone and, to the inquiry "in this period between October 13, 1967, and January 26, 1968 [during which the charges constituting the account in suit were incurred], did you receive orders from him [defendant]," she replied "yes, sir," although this positive affirmation was qualified thusly on cross-examination, "I would say I did, but I do not know." Bookkeeper Skidmore similarly stated that she was acquainted with defendant's voice over the telephone and had received telephonic orders from him, and that some of those orders "probably" and "more than likely" were taken during the period the account in suit came into being, although she could not so state definitely. And the testimony of bookkeeper Taylor ran along the same line.

Witnesses Ed Sibley and Lewis Stephson, plaintiff's bulk truck drivers, carefully explained the procedure followed in handling and filling orders for bulk feed and also testified with particularity concerning their deliveries of all of the bulk hog feed billed to plaintiff in the account under consideration. All of those deliveries were made (so plaintiff's drivers stated) either to the Noyes place or to the Stephens place, since defendant sold Grade A milk from a herd of dairy cows on the home place and, as he explained, "the State man wouldn't let [him] . . . run hogs and cows together." The factual essence of defendant's case (supported solely by his own testimony) was that he sold all of his hogs "the first part of October" 1967 in this wise—"a man from Iowa [otherwise unidentified] came down and wanted to buy the hogs, and I priced them to him, and told him that if he wanted the hogs to bring the cash . . . and he brought the money, and brought the trucks, and loaded them in it, and paid me, and went on about his business"—and that he (defendant) did not go back "in the hog business [until] way after the first of the year [1968], sometime." However, plaintiff's drivers insisted that there were hogs on defendant's farms at the time of each delivery of bulk hog feed—in fact, so many hogs that the drivers frequently experienced difficulty in driving through the gates and distributing the feed "in hog feeders around over the place."

There was other significant evidence, ignored in defendant's brief, which bore upon the determinative issue as to whether or not he had ordered the feed for which the charges in suit had been made. Referring to the sales tickets theretofore received in

evidence, all of which named defendant "W. W. Eagon" as the purchaser, the trial court's inquiry of plaintiff's manager Hayter, "were these [sales tickets] made in response to orders," elicited the positive assurance, "yes, sir." Manager Hayter also vouched for the accuracy of plaintiff's exhibit 16, the sheet from plaintiff's general ledger showing "W. W. Eagon's account during this period."

A statement of his account was sent to defendant about the first of each month. No payment having been made on the account in the meantime, manager Hayter called on defendant at his home during August 1968. "I [Hayter] went to the door, and he [defendant] invited me in, and I visited with them for quite some time, and told him . . . we was needing this money . . . . He said, 'Well, I will pay you. I can't pay you right now, but,' he said, 'in a short time, I will bring it in, and pay it.' Everything was all right, as far as I knew." Having received no payment in the meantime, Hayter returned to defendant's home "in the latter part of September" 1968. On that occasion "I [Hayter] told him, 'Walter, I haven't got your money yet, and I need my money.' And he said, 'I am going to pay you, but don't push me. I am going to pay, but don't push me.' So I thanked him, and I said, 'Well, I will sure appreciate it just as soon as you can get the money.' "

█ If so made by him, the foregoing statements by defendant obviously constituted admissions against interest, wholly irreconcilable with and diametrically contrary to his position in the case at bar, i. e., that he did not order (and, in fact, did not receive) any of the feed for which the charges in suit were entered. A party's admission against interest of a material fact relevant to an issue in the case being competent against him as substantive evidence of the fact [Gaddy v. State Board of Registration for Healing Arts, Mo.App., 397 S.W.2d 347, 354(5); Rutledge v. Ballance, Mo.App., 375 S.W.2d 214, 215(1); 4 Wig-

more on Evidence § 1048, 1.c. 5–6; 31A C.J.S. Evidence § 273, p. 704], an admission by a defendant may be utilized by plaintiff in proving its cause of action. Wells v. Wells, Mo.App., 48 S.W.2d 109, 111; Kilcoyne v. Metz, Mo.App., 258 S.W. 4, 6(5); Pinteardd v. Hosch, Mo.App., 233 S.W. 81, 83(2). And a statement by a party may be competent as an admission against interest and may be of probative value if it bears on an issue incidentally or circumstantially, even though it be not a direct admission of the ultimate fact in issue. White v. Burkeybile, Mo., 386 S.W.2d 418, 422(2); Scherffius v. Orr, Mo.App., 442 S.W.2d 120, 124–125(5, 6); Gaddy, supra, 397 S.W.2d at 354(6). See Donnelly v. Goforth, Mo., 284 S.W.2d 462, 465(2); Hoeffner v. Western Leather Clothing Co., Mo.App., 161 S.W.2d 722, 730(20, 21); 31A C.J.S. Evidence § 272a, p. 696.

█ In the instant case, it was for the triers of the facts to decide whether, in conversations with plaintiff's manager Hayter, defendant had made the hereinbefore-quoted statements in the nature of admissions against interest [Latham v. Hosch, 207 Mo.App. 381, 387, 233 S.W. 84, 86(2)] and, if so, to determine the weight and value to be accorded thereto [Scherffius, supra, 442 S.W.2d at 125(6)]— a determination in which they well might have been influenced by the circumstance that, although upon trial generally disavowing any indebtedness to plaintiff, defendant did not deny having made the statements attributed to him by Hayter. See Richardson v. Liggett, Mo.App., 453 S.W. 2d 249, 254(2). Having in mind that even an express contract need not be proved by direct testimony [Chandler v. Hulen, 335 Mo. 167, 172, 71 S.W.2d 752, 755; Robinson Steel Construction Co. v. White, Mo.App., 305 S.W.2d 58, 60(1); Lauf v. Wiegersen, Mo.App., 21 S.W.2d 635, 637(7)] and that in jury-tried cases an appellate court does not weigh the evidence and is authorized to interfere only when there is a complete absence of probative facts to support the verdict [Elliott v. Wescoat, Mo., 336 S.W.

2d 649, 652(6); Siegel v. Ellis, Mo., 288 S.W.2d 932, 934(1); O'Connor v. Egan, Mo.App., 274 S.W.2d 334, 336(4)], we conclude that instant plaintiff made a submissible case and that accordingly the trial court did not err in overruling defendant's motion for a directed verdict at the close of the evidence and in denying his after-trial motion to set aside the judgment for plaintiff and to enter judgment for defendant.

The only other point presented on appeal is that the trial court erred in denying defendant's motion to discharge the jury and declare a mistrial when, at the close of plaintiff's case, an exhibit not in evidence was among those handed to the jury for examination. In the course of manager Hayter's direct examination, he identified plaintiff's exhibit 17 as a copy of a letter dated February 20, 1969, which he had written and mailed to defendant. When it was offered in evidence, defendant's counsel objected to its reception on the ground it was "self-serving." After the ensuing colloquy between court and counsel, the direct examination of manager Hayter was resumed without any ruling upon either plaintiff's offer of exhibit 17 or the objection of defendant's counsel. This exhibit was among those which plaintiff's counsel subsequently passed to the jury "by mistake"—"inadvertently handed" to them.

Addressing defendant as "Dear Walter," manager Hayter wrote as follows: "In regard to your account of $4,062.34 purchased from October 13, 1967 to January 26, 1968. When I visited in your home last August, you promised to take care of this soon, then when I was out there again in September you promised to pay, but did not want to be rushed, which I do not think we have. Walter I surely have appreciated doing business with you, and have been waiting patiently for you to take care of this, which is long past due. Will you please let us have your check by March 1, or let me know the earliest date you can take care of this, as we cannot continuesly (sic) carry." Since Hayter theretofore had testified without objection to the same promises allegedly made by defendant in August and September, the letter constituted no more than cumulative evidence of matters already before the jury; and, as the capable trial judge pointed out in ruling defendant's motion for a mistrial, a matter which rested largely within his sound judicial discretion [Hay v. Ham, Mo.App., 364 S.W.2d 118, 127(18)], the inclusion of this letter among the numerous exhibits passed to the jury could not reasonably have been deemed to have constituted prejudicial error. Murphy v. Buschman-Jennings, Inc., Mo.App., 382 S.W.2d 29, 33–34(7, 8). See Hunt v. Hunt, Mo.(banc), 423 S.W.2d 682, 684(4); Kelly v. Terminal R. Ass'n. of St. Louis, Mo., 315 S.W.2d 699, 703(3); Landum v. Livingston, Mo.App., 394 S.W.2d 573, 579–580(9); Nuckols v. Andrews Investment Co., Mo.App., 364 S.W.2d 128, 139(14). Appellate courts do not sit to reverse cases for error not "materially affecting the merits of the action." V.A.M.R. 83.13(b); V.A.M.S. § 512.160(2).

The judgment for plaintiff is affirmed.

TITUS, P. J., and HOGAN, J., concur.